Joan Susan HANSEN, Individually and as Sole Distributee of The Estate of Allen Wayne Hansen, Deceased, and A/N/F of Lisa Marie Hansen and Jason Eric Hansen, Sara Ann Hansen, Individually, and Ina Hansen, Individually, Appellants,

v.

Alicia STARR, M.D., John C. Pestaner, M.D., and Mitchell Magee, M.D., Appellees.

No. 05–02–01735–CV.

Court of Appeals of Texas, Dallas.

July 23, 2003.

Rehearing Overruled Sept. 15, 2003.

Robert Alan York, David W. Holman, Holman & Keeling, P.C., Houston, for Appellants.

Christine D. Roseveare, Bryan J. Maedgen, Strausburger & Price, L.L.P., Russell G. Thornton, Michael Alan Yanof, Stinnett, Thiebaud & Remington, L.L.P., Dallas, for Appellees.

Before Justices MORRIS, WRIGHT, and MOSELEY.

## OPINION

Opinion By Justice MORRIS.

In this appeal, we once again address a trial court's dismissal of health care liability claims due to the plaintiffs' failure to file an adequate expert report as required by section 13.01 of the Medical Liability and Insurance Improvement Act. Joan Susan Hansen individually and as sole distributee of the estate of Allen Wayne Hansen, deceased, and as next friend of their minor children, together with Sara Ann Hansen, and Ina Hansen challenge the trial court's dismissal of their claims against Alicia Starr, M.D., John C. Pestaner, M.D., and Mitchell Magee, M.D. The Hansen family argues the trial court abused its discretion in dismissing the family's claims for failure to file an adequate expert report. They contend the defendant doctors waived any complaint about the report by failing to timely challenge its adequacy and the report satisfied the good faith requirement of section 13.01. In the alternative, the Hansens contend they should have been granted a grace period to cure any insufficiencies in the report. After reviewing the record, we conclude the doctors did not waive their right to challenge the adequacy of the expert report and the report did not meet the statutory requirements of the Act. We further conclude the Hansen family was not entitled to a grace period within which to file a new report. Accordingly, we affirm the trial court's judgment dismissing the Hansens' claims.

## I.

In the fall of 1999, Allen Wayne Hansen died of cardiac arrest caused by an aortic dissection. On February 20, 2001, Hansen's family filed suit against various doctors who had treated him, including radiologists Alicia Starr and John Pestaner and cardiac surgeon Mitchell Magee. The family alleged that the doctors' negligent medical care caused Hansen's death. One hundred and seventy-eight days after filing their lawsuit, the Hansens filed an expert report as required by section 13.01 of the Texas Medical Liability and Insurance Improvement Act.[1] The report was signed by Dr. John S. MacGregor. The report lists MacGregor's credentials as a cardiologist and states he is familiar with the standard of care for the diagnosis and treatment of patients with complaints, histories, and findings similar to Hansen's.

In reciting the events occurring during Hansen's treatment, the report states that Starr and Pestaner interpreted a CT scan of Hansen's chest to show "[n]o CT evidence for dissection." The report further states that Starr and Pestaner concluded the "ascending aorta is possibly mildly prominent in size but not significantly dilated." The report also addresses Magee's treatment of Hansen. The report states Magee noted during a consultation that there were findings of ascending aortic aneurysm, aortic insufficiency, pericardial effusion and mediastinal inflammation along with symptoms of syncope and chest pain, but that Magee concluded that the etiology was unclear. MacGregor's report states that, after reviewing Hansen's medical records, he determined Starr and Pestaner fell below the accepted standards of care in their reading of the CT scan because their description of the ascending aorta was inaccurate and misleading. MacGregor further concluded that Magee fell below the accepted standards of care because he failed to properly integrate the symptoms and test findings, resulting in a failure to diagnose the aortic dissection. MacGregor's report concludes that the errors made by the doctors caused Hansen's death.

After the report was filed, the parties engaged in discovery including interrogatories, requests for disclosure, and depositions. On February 22, 2002, Starr and Pestaner filed motions to dismiss the Hansens' claims with prejudice under sections 13.01(e) and (*l*) of the Act[2] contending

---

1. Section 13.01(d) provides:

 Not later than the later of the 180th day after the date on which a health care liability claim is filed or the last day of any extended period established under subsection (f) or (h) of this section, the claimant shall, for each physician or health care provider against whom a claim is asserted:
 (1) furnish to counsel for each physician or health care provider one or more expert reports, with a curriculum vitae of each expert listed in the report; or
 (2) voluntarily nonsuit the action against the physician or health care provider.

2. Section 13.01(e) states:

 If a claimant has failed, for any defendant physician or health care provider, to comply with subsection (d) of this section within the time required, the court shall, on the motion of the affected physician or health care provider, enter an order awarding as sanctions against the claimant or the claimant's attorney:
 (1) the reasonable attorney's fees and costs of court incurred by that defendant;
 (2) the forfeiture of any cost bond respecting the claimant's claim against that defendant to the extent necessary to pay the award; and
 (3) the dismissal of the action of the claimant against that defendant with prejudice to the claim's refiling.
 Section 13.01(*l*) provides:
 A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6) of this section.

MacGregor's expert report failed to comply with the requirements of section 13.01(r)(6).[3] Specifically, Starr and Pestaner contended that MacGregor's report showed he was a cardiologist, not a radiologist, and, therefore, he was not an "expert" qualified to testify about the standard of care applicable to radiologists as required by section 13.01(r)(5).[4] In response, the Hansens argued that although MacGregor specialized in cardiology, he routinely reviewed CT scans under circumstances similar to those confronted by Starr and Pestaner and this experience rendered him qualified to render an opinion. In support of this argument, the Hansens attached an affidavit by MacGregor discussing his experience with radiological studies. Starr and Pestaner then filed a supplemental motion to dismiss reiterating their argument that MacGregor was not qualified and adding that the expert report was inadequate because it failed to set forth the applicable standard of care and how that standard was breached.

Magee also moved to dismiss the Hansens' claims under section 13.01 based on the alleged inadequacy of the expert report. Like Starr and Pestaner, Magee

argued that MacGregor's report did not show he was qualified to opine on the applicable standard of care. Magee further argued that the report did not set forth the standard of care, did not adequately describe the manner in which he had breached the standard, and did not establish how the alleged breach proximately caused the injuries sustained.

After a hearing, the trial court granted the motions and dismissed the Hansens' claims against Starr, Pestaner, and Magee with prejudice. The Hansens then filed a motion for new trial arguing for the first time that the doctors had waived their right to complain about the adequacy of the expert report by engaging in pretrial discovery for approximately six months after the report was filed. According to the Hansens, this conduct led it to believe that MacGregor's expert report was adequate. Based on the alleged six month "delay" in filing the motions to dismiss and the doctors' conduct during that period of time, the family argued the motions were not "timely." In the alternative, the Hansens argued they should be granted a grace period under section 13.01(g) to file an amended report meeting the requirements

3. Section 13.01(r)(6) defines an expert report as follows:

"Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between the failure and the injury, harm, or damages claimed.

4. Under section 13.01(r)(5) an "expert" is defined as:

(A) with respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, an expert qualified to testify under the requirements of Section 14.01(a) of this Act; ...

Section 14.01(a) states:

In a suit involving a health care liability claim against a physician for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether a physician departed from accepted standards of medical care only if the person is a physician who:

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

of the Act. The trial court denied the motion for new trial and severed the claims against Starr, Pestaner, and Magee from the claims against the remaining doctors in the suit. This appeal ensued.

## II.

As their first issue, the Hansens contend the trial court erred in granting the motions to dismiss because the doctors waived their right to complain about the adequacy of the expert report. As noted above, however, the Hansens did not raise the issue of waiver in their responses to the motions to dismiss. In reviewing the trial court's judgment, we may only consider what was before the trial court at the time it made its decision. *See Thompson v. Haberman*, 739 S.W.2d 71,72 (Tex.App.-San Antonio 1987, orig. proceeding). Because the Hansens did not assert waiver in their responses, the trial court could not have addressed the argument when it dismissed their claims.

The issue of waiver was first raised by the Hansens in their motion for new trial. Accordingly, the only ruling made by the trial court that addressed this argument was its decision to deny the Hansens' motion for new trial. Nowhere in this appeal does the family challenge the trial court's denial of that motion. By failing to challenge the trial court's denial of the motion for new trial, the Hansens have waived any error associated with that ruling.

Even assuming the Hansens did not waive the issue of the doctors' alleged failure to "timely" file their motions to dismiss, we conclude the record does not support the family's contention that the doctors' conduct constituted implicit waiver of any claim that the report was inadequate. Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that

right. *See Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex.1987). The Hansens argue that the doctors' delay of approximately six months before challenging the expert report and their participation in pretrial discovery during that period was intentional conduct inconsistent with the doctors' right to challenge the report. The family relies heavily on the case of *Langley v. Jernigan*, 76 S.W.3d 752 (Tex.App.-Waco 2002), *rev'd*, 111 S.W.3d 153 (Tex.2003).

In *Langley*, the Waco Court of Appeals held that a defendant doctor waived his right to challenge the plaintiff's expert report because he waited twenty months to file his motion to dismiss. *Langley*, 76 S.W.3d at 757. During that twenty month period, the doctor engaged in extensive discovery, filed a motion for summary judgment, and amended his answer to delete the affirmative defense of "failure to follow the statutory steps to perfect a claim." *Id.* The court concluded this conduct was inconsistent with an intent to complain about the adequacy of the plaintiff's expert reports. *Id.* at 758.

Recently, however, the Texas Supreme Court reversed the Waco court's decision in *Langley*, holding that the doctor's actions did not rise to the level of waiver. *Langley*, 111 S.W.3d at 157. The supreme court concluded that a delay in filing a motion to dismiss is insufficient to establish relinquishment of the right to do so unless the silence or inaction is inconsistent with the intent to rely upon the right of dismissal. *Id.* The court further held that the mere participation in pretrial matters such as filing motions for summary judgment and participation in discovery is not inconsistent with the intent to assert the right to dismissal. *Id.* Because the doctors in this case did no more than participate in some discovery before filing their motions to dismiss, their actions did

not result in a waiver of their right to challenge the Hansens' expert report and seek dismissal of the family's claims. We resolve the Hansens' first issue against them.

In their second issue, the Hansens argue the trial court erred in concluding MacGregor's expert report was inadequate and dismissing the family's claims. The Hansens contend the report satisfied the "good faith effort" requirement of section 13.01. Pursuant to section 13.01($l$), the court may grant a motion challenging the adequacy of an expert report only if the court concludes the report does not represent a good faith effort to comply with the definition of an expert report. TEX.REV. CIV. STAT. ANN. art. 4590i § 13.01($l$) (Vernon Supp.2003). The definition of what constitutes a good faith effort to comply is very narrow, however. A good faith effort always produces a report that satisfies all the statutory requirements for an expert report. *Whitworth v. Blumenthal*, 59 S.W.3d 393, 407 (Tex.App.-Dallas 2001, pet. dism'd by agr.) (J. Morris concurring).

We review a trial court's order dismissing a claim for failure to comply with section 13.01's expert report requirements under an abuse of discretion standard. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002). If the trial court determines the expert report lacks any of the necessary statutory elements, it is not an abuse of discretion for the trial court to dismiss the plaintiff's claims. *See Whitworth*. 59 S.W.3d at 408. When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *See Bowie*, 79 S.W.3d at 52.

For a document to be considered an "expert report" for the purposes of section 13.01, it must be rendered by someone qualified to testify as an expert on the relevant medical subject area. *See Chisholm v. Maron*, 63 S.W.3d 903, 907 (Tex.App.-Amarillo 2001, no pet.). The report itself must show that the expert is qualified. *See id.* In determining whether the purported expert is qualified to offer an opinion the court may consider whether the expert (1) is board certified or has other substantial training or experience in the area of medical practice relevant to the claim, and (2) is actively practicing medicine in rendering medical care services relevant to the claim. TEX.REV. CIV. STAT. ANN. art. 4590i § 14.01(c).

In this case, MacGregor's expert report and accompanying curriculum vitae show that he is board certified in internal medicine, cardiology, and interventional cardiology. They further show that MacGregor both teaches and practices cardiology and interventional cardiology. Finally, in his expert report, MacGregor states he is "familiar with the standard of care for the diagnosis and treatment of patients with complaints, histories and findings similar to Allen Hansen."

Nothing in MacGregor's report shows that he is qualified on the basis of training or experience to render an expert opinion in the area of radiology. The Hansens attempted to cure this defect in the report with a later affidavit in which MacGregor states he routinely examines and assesses CT scans, MRIs and other radiological studies as part of his medical practice. As the Hansens concede, however, the determination of whether an expert report constitutes a good faith effort to comply with the statutory requirements is limited to an examination of the report alone. *See American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex.2001). Whether MacGregor was actually qualified to testify as an expert on the evaluation of CT scans of the

**20**

heart is not pertinent to the issue of the adequacy of his expert report in this case. Similarly, MacGregor's supplemental affidavit has no bearing upon whether his initial report demonstrates his qualifications as an expert. An expert report must show within the document itself that the purported expert is qualified to testify about the particular subject matter on which the opinion is offered. *See Chisholm,* 63 S.W.3d at 906–07. Because MacGregor's report does not show that he is qualified as an expert in the area of radiology, the trial court could have concluded the report did not represent a good faith effort to comply with the statutory requirements for an expert report. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, §§ 13.01(r)(5) & (6). Thus, the trial court did not abuse its discretion in granting Starr and Pestaner's motion challenging the expert report.

 In addition to showing the expert's qualifications, it is critical that an expert report show the standard of care applicable to the defendant health care provider and how the defendant breached that standard. *See Palacios,* 46 S.W.3d at 873. The report must provide specific information about what the defendant should have done differently. *Id.* at 880. A report that merely states the expert's conclusions about the standard of care and how it was breached is not a "good faith effort" to fulfill the requirements of section 13.01. *Id.* at 879.

Magee challenged MacGregor's expert report contending, among other things, that the report failed to set forth the standard of care applicable to him and how he

breached it. The portions of the report relating to Magee state that he looked at all the findings and test results and concluded "the etiology was unclear." MacGregor opines that Magee "fell below accepted standards of care in his treatment of Mr. Hansen in that he failed to properly integrate the symptoms and test findings, and thereby failed to diagnose Mr. Hansen's acute Type A aortic dissection."

 It was within the trial court's discretion to conclude that MacGregor's report did not constitute a good faith effort to comply with the statutory requirements. The report gives no specific information about what Magee should have done differently or what a reasonably prudent doctor would have done under the same or similar circumstances.[5] *See Palacios,* 46 S.W.3d at 880. MacGregor's report does not suggest that Magee failed to follow procedures or that he failed to examine Hansen properly during his consultation. Instead, the report shows that Magee looked at all the relevant information when he evaluated Hansen and simply came to a different conclusion about Hansen's condition than MacGregor did. Based on the nature of the statements made in MacGregor's report, the trial court could conclude that MacGregor's report did not sufficiently put Magee on notice of what specific conduct he committed that breached a standard of care applicable to him.

 As an alternative to arguing that its report complied with the requirements of section 13.01, the Hansens contend the trial court erred in refusing to grant it a

5. We note that MacGregor's report states that "a reasonably prudent cardiologist caring for Mr. Hansen on 11–7–99, would have made a diagnoses of Type A aortic dissection or impending aortic aneurysm rupture." The statement was made in connection with the care given Hansen when he was first admitted to the hospital. Magee did not evaluate Hansen's condition until three days later.

thirty-day grace period within which to file an amended report under section 13.01(g).[6] The Hansens concede they did not request a grace period until they filed their motion for new trial. Section 13.01(g) specifically states that, to be considered timely, a motion for relief under that section must be filed before any hearing on the motion to dismiss. Because the Hansens did not request a grace period until they filed their motion for new trial, the request was untimely and the trial court did not abuse its discretion in denying it.

 Even if the request had been made timely, the Hansens were not entitled to a grace period under section 13.01(g) because they failed to show that their failure to file an adequate expert report was not intentional or the result of conscious indifference. *See* § 13.01(g). The sole reason offered by the Hansens to support their entitlement to a grace period was that their attorney mistakenly believed MacGregor's expert report complied with the statutory requirements. The Texas Supreme Court recently held that a claimant's purportedly mistaken belief that its expert report complies with the statute does not negate a finding of intentional or conscious indifference and will not entitle the claimant to a thirty-day grace period under section 13.01(g). *See Walker v. Gutierrez,* 46 Tex. Sup.Ct. J. 812, 2002 WL 32116846 (Tex. June 19, 2003).

Based on the forgoing, we resolve the Hansens' second issue against them and affirm the trial court's judgment dismiss- ing their claims against Drs. Starr, Pestaner, and Magee.

---

6. Section 13.01(g) states:
 Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.