Opinion issued March 3, 2005 



     






In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00151-CV




THE ESTATE OF EMZIE ALLEN, GLORIA BROWN, INDIVIDUALLY
AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES,
Appellant

V.

POLLY RYON HOSPITAL AUTHORITY D/B/A POLLY RYON
MEMORIAL HOSPITAL AND SUKLESH DANDONA, M.D., Appellees




On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 02-CV-126567




MEMORANDUM OPINION

          Appellant, Gloria Brown, filed health-care liability claims on behalf of the
estate of Emzie Allen against appellees, Suklesh Dandona, M.D., and Polly Ryon
Memorial Hospital (the hospital). Brown’s appeal challenges orders by the trial court
that dismissed her claims with prejudice on the grounds that her expert reports did not
comply with the requirements of former article 4590i of the Medical Liability and
Insurance Improvement Act (MLIIA). See Tex. Rev. Civ. Stat. Ann. art. 4590i, §
13.01(e), (r)(6) (Act of May 30, 1977, 65th Leg., R.S., ch. 817, §§ 1.01-12.01, 1977
Tex. Gen. Laws 2039-53, repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204
§ 10.09, 2003 Tex. Gen. Laws 847, 884) (current version at Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(b)(2), (r)(6) (Vernon Supp. 2004-2005)).


 In two issues on
appeal, Brown contends that the trial court abused its discretion by dismissing her
entire medical-negligence case because (1) the reports represent a good-faith effort
to provide a fair summary of the experts’ opinions on the standard of care, breach of
that standard, and causation of Allen’s non-death related injuries and (2) certain of
Brown’s statutorily based claims are beyond the scope of article 4590i and are
therefore exempt from its expert-report requirements. We affirm.
Background
          Emzie Allen, an elderly male patient, was admitted from a nursing home to the
hospital’s acute-care center with a diagnosis of severe dehydration, acute renal
failure, malnutrition, and urinary tract infection. After initial treatment, Allen was
transferred to the hospital’s skilled-nursing facility. He died 45 days after admission.
Brown filed a wrongful-death and survival action on behalf of Allen’s estate.


 
Brown’s pleadings allege that Allen received sub-standard medical and nursing care
and treatment at the hospital and from Dr. Dandona, and that deficiencies in Allen’s
care resulted in several infections, decubitus ulcers, malnourishment, and, ultimately,
Allen’s death. Brown claimed that, but for the negligence of Dr. Dandona and the
hospital, Allen would not have sustained these injuries. In addition to seeking
damages for the estate’s negligence claims, Brown’s pleadings also alleged that Dr.
Dandona and the hospital violated Allen’s statutory patient’s bill of rights


 and the
Penal Code.


 
          Brown filed two expert reports. The first contained the opinion of a physician,
Jeannae Dergance, M.D., concerning the care provided to Allen by Dr. Dandona and
the hospital; the second contained the opinion of a registered nurse, Linda McCall,
R.N., concerning the care provided to Allen by the hospital. Dr. Dandona moved to
dismiss Brown’s lawsuit on the grounds that Dr. Dergance’s report did not meet the
statutory requirements of article 4590i, section 13.01(r)(6), because the report did not
provide a fair summary of Dr. Dergance’s opinions regarding the applicable standard
of care for Allen’s injuries and the causal relationship between the breach of this
standard and his injuries. The hospital’s motion to dismiss presented substantially the
same arguments about Nurse McCall’s report, but also asserted that her report was
inadequate because it did not show that she was qualified to offer expert opinion. 
The trial court dismissed Brown’s claims against Dandona with prejudice. In
overruling Brown’s motion for reconsideration, the trial court also dismissed her
claims against the hospital with prejudice.
Standard of Review
          We review article 4590i, section 13.01 rulings for abuse of discretion. Walker
v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003) (construing section 13.01(g)); Bowie
Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002) (construing section 13.01 (l)
and (r)(6)); Am. Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001)
(construing section 13.01(e)). Under this standard, we determine whether the trial
court acted arbitrarily and without reference to any guiding rules or principles when
it struck Brown’s expert reports and dismissed her case with prejudice. See Walker,
111 S.W.3d at 62; Strom v. Mem’l Hermann Hosp. Sys., 110 S.W.3d 216, 220 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied). We may not reverse a trial court’s
discretionary ruling simply because we might have decided it differently. See Walker,
111 S.W.3d at 62; Strom, 110 S.W.3d at 220. 
Good-Faith Compliance with Expert-Report Requirements
          In her first point of error, Brown contends that the expert reports of Dr.
Dergance and Nurse McCall establish a good-faith effort to provide a fair summary
of the experts’ opinions on the standard of care, breach and causation elements for
Allen’s “non-death related injuries.” We construe Brown’s argument as (1)
contending that her expert reports met the requirements of article 4590i, section 13(d)
for her survival action, while (2) conceding that the reports do not meet those
requirements for her wrongful-death claims. 
          Because Brown’s petition alleged health-care liability claims under article
4590i, the law that controls this case required her to (1) furnish an expert report, with
supporting curriculum vitae, to counsel for each defending physician or health-care
provider or (2) failing that, voluntarily nonsuit her claims. See Tex. Stat. Ann. art.
4590i, § 13.01(d) (repealed); Strom, 110 S.W.3d at 220. 
A.      Required Contents of Expert Report Under Former Article 4590i
          To constitute an “expert report” under former Article 4590i, a report had to be
in writing and, in addition
provide. . . a fair summary of the expert’s opinions as of the date of the
report regarding [1] applicable standards of care, [2] the manner in
which the care rendered by the physician or health care provider failed
to meet the standards, and [3] the causal relationship between that
failure and the injury, harm, or damages claimed.
 
Tex. Rev. Stat. Ann. art. 4590i, § 13.01(r)(6) (repealed); Bowie Mem’l Hosp., 79
S.W.3d at 51; Strom, 110 S.W.3d at 220. The “report” requirement under former
article 4590i did not compel the plaintiff to marshall its proof or meet the
requirements for evidence offered to support a summary judgment or at trial. See
Bowie Mem’l Hosp., 79 S.W.3d at 52; Strom, 110 S.W.3d at 221. The statute did,
however, require that the report include the expert’s opinion on each of the three
elements defined by section 13.01(r)(6), as follows: (1) the standard of care, (2) how
the defendant breached the standard, and (3) the causal relationship between the
breach and the plaintiff’s injury. Bowie Mem’l Hosp., 79 S.W.3d at 52; Strom, 110
S.W.3d at 221. 
          Section 13.01(l) of former article 4590i authorizes a defendant physician or
health-care provider to move for dismissal of the plaintiff’s claims, with prejudice,
on the grounds that an expert report does not meet the requirements of section
13.01(r)(6). Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(l), (r)(6). Dr. Dandona
and the hospital relied on section 13.01(l) in their motions to dismiss. 
          When considering a section 13.01(l) motion, the issue before the trial court is
whether the plaintiff’s expert report constitutes a “good-faith effort” to comply with
section 13.01(d) and (r)(6). Bowie Mem’l Hosp., 79 S.W.3d at 52. To constitute a
good-faith effort, the report must (1) inform the defendant of the specific conduct
called into question by the plaintiff’s claims and (2) provide a basis from which the
trial court may conclude the claims have merit. Id. A report that merely states an
expert’s conclusions about the standard of care, breach, and causation does not fulfill
these purposes. Id.; see Palacios, 46 S.W.2d at 879; Strom, 110 S.W.3d at 221. 
Similarly, a report that omits any of the statutory requirements does not constitute a
good-faith effort. Palacios, 46 S.W.3d 873, 879. An expert report that provides only
conclusory statements of the expert’s opinion on causation, or does not include an
opinion on causation at all, does not meet the requirements of section 13.01(r)(6). 
Bowie Mem’l Hosp., 79 S.W.3d at 53; Palacios, 46 S.W.3d at 878-89; see Hutchinson
v. Montemayor, 144 S.W.3d 614, 617 (Tex. App.—San Antonio 2004, no pet.). 
Likewise, an expert report that states only that a defendant’s conduct “might have”
caused the alleged injury, or that alternative therapy that was not done might have
prevented injury, fall short of the standard of causation imposed by section
13.01(r)(6), which requires the expert to summarize the causal relationship between
the alleged injury to the plaintiff and the defendant’s alleged failure to meet the
applicable standards of care. Bowie Mem’l Hosp., 79 S.W.3d at 53; Hutchinson, 144
S.W.3d at 617. In determining whether a report represents a good-faith effort to
comply with the definition of “expert report” under former article 4590i, section
13.01 (r)(6), the trial court is limited to the words stated within the four corners of the
report. Bowie Mem’l Hosp., 79 S.W.3d at 53; Palacios, 46 S.W.3d at 878. 
B.      Who May Execute Report—Nurse McCall’s Report
          The Dallas, Amarillo, and San Antonio Courts of Appeals have recognized 
that, to comply with section 13.01(d) and (r)(6), the expert report must establish, on
its face, that the purported expert is qualified. See Hansen v. Starr, 123 S.W.3d 13,
20 (Tex. App.—Dallas 2003, pet. denied) (holding that expert executing report must
demonstrate qualifications “within the document itself”); see also Chisholm v. Maron,
63 S.W.3d 903, 907 (Tex. App.—Amarillo 2001, no pet.) (same); Schorp v. Baptist
Mem’l Health Sys., 5 S.W.3d 727, 732 (Tex. App.—San Antonio 1999, no pet.)
(holding that report that omitted expert’s name and qualifications did not meet
requirements of section 13.01(d) of article 4590i and therefore did not meet
requirements of section 13.01(r)(6)). Section 13.01 of former article 4590i implies
this requirement. See former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(6)
(identical, current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6)
(Vernon Supp. 2004-2005)) (defining “expert report” as “written by an expert”);
former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(5)(A) (current, comparable
version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(A) (Vernon Supp.
2004-2005)) (defining “expert” as “qualified to testify” under the requirements of
former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 14.01(a)); see also Chisholm, 63
S.W.3d at 906-07 (interpreting statute and supreme court’s Palacios decision as
clearly mandating that expert report presented to comply with article 4590i “must
illustrate that the person rendering the opinion . . . is a qualified medical expert.”)


 
As the Chisholm court noted, “anything less would fall short of providing a basis for
the trial court to conclude that the claims have merit.” Id. at 907.
          Nurse McCall’s report consists of seven, single-typed pages. Brown
acknowledges that McCall “could not, in good faith, present an opinion on the
causation of [] Allen’s death, she did[,] nevertheless, thoroughly describe the standard
of care, breach[,] and causation of [his] non[-]death injuries.” On the first page of the
report, McCall states that she reviewed the records of Polly Ryon Hospital and its
skilled-nursing facility pertaining to Allen, for the period beginning on August 3,
2000 and ending on September 9, 2000, as well as his death certificate. Although
extensive in many other respects, McCall’s report contains only a single, two-sentence paragraph to demonstrate her expertise, as follows:
My opinions regarding the care and treatment experienced by Emzie
Allen are based on 24 years of experience as a registered nurse. My
experience as a staff nurse, nurse manager, nurse consultant, Risk
Manager, and Claims Manager, requires that one be familiar with the
standards of practice required for the nursing services personnel.

          Brown contends on appeal that Nurse McCall is an expert “by experience and
training,” and that she need not be a physician to qualify as an expert to “describe the
standard of care, breach, and causation for . . . Allen’s non[-]death injuries.” We
disagree. Although Nurse McCall’s describes herself as an experienced nurse and
“familiar with” the standards of practice for nursing personnel, nothing within the
four corners of her report demonstrates whether or how she “possess[ed the] special
knowledge” that she claimed to have concerning her opinion that the nursing care
provided to Allen (1) fell below the standard of care, (2) how that standard was
breached, or (3) how the breach caused his injuries. See Broders, 924 S.W.2d at 152-53; In re Windisch, 138 S.W.3d 507, 514 (Tex. App.—Amarillo 2004, orig.
proceeding) (holding that conclusory references to expert’s “extensive” background
did not suffice to demonstrate expertise). McCall does not specify how many of her
24 years were spent in administering actual nursing care rather than as a manager or
consultant. More importantly, McCall does not explain the extent of her nursing
experience or whether any of her experience entailed either the initial level of acute
care or, later, the “skilled-nursing” level of care that Allen undisputedly required. 
          Because Nurse McCall’s report did not demonstrate her expertise and therefore
did not show that she was qualified to express her opinions on standard of care,
breach, and causation, the trial court could have concluded, for that reason, that Nurse
McCall’s report was conclusory and, therefore, did not constitute a good-faith effort
to comply with the requirements of former article 4590i §§ 13.01(r)(5) and (6). See
In re Windisch, 138 S.W.3d at 514; Hansen, 123 S.W.3d at 19-20; Chisholm, 63
S.W.3d at 906-08; Schorp, 5 S.W.3d at 732. Because that reason suffices to support
the trial court’s exercise of its discretion, we need not decide whether the hospital’s
and Dr. Dandona’s remaining challenges to Nurse McCall’s report were meritorious.
C.      Dr. Dergance’s Report
          Allen challenges the trial court’s ruling as to the report of Dr. Dergance, who
offered her opinion concerning the care provided by both Dr. Dandona and the
hospital. Allen contends that Dr. Dergance’s report represented a good-faith effort
to provide a basis from which the trial court could have concluded that Allen’s non-death claims had merit. 
          An expert report that provides only conclusory statements of the expert’s
opinion on a statutorily required element or omits an opinion on an element does not
meet the requirements of article 4590i § 13.01(r)(6). Bowie Mem’l Hosp., 79 S.W.3d
at 52-53 (holding that expert report stating that plaintiff “would have had the
possibility of a better outcome” if x-rays had been correctly read and appropriately
acted upon, failed to explain how hospital’s conduct caused injury and was therefore
conclusory on causation element); Palacios, 46 S.W.3d at 878-79 (failure to state
standard of care). 
          Dr. Dergance’s report in this case addresses several “area(s) of concern.” 
These include (1) treatment of Allen’s multiple decubitus ulcers and reassessment of
these wounds, by both Dr. Dandona and the hospital nursing staff, (2) Allen’s
antibiotic treatment, and (3) Dr. Dandona’s documentation of Allen’s treatment. 
Regarding the decubitus tumors and reassessment by Dr. Dandona, Dr. Dergance’s
report states as follows:
The standard of care for this type of wound includes debridement,
preferably surgical/mechanical, to first remove the black eschar before
applying any type of additional wound dressing. I did not find any
evidence of such a procedure having been performed. As a result, these
wounds were more likely to persist and/or worsen, increasing Mr.
Allen’s level of pain and risk of wound infection. 
 
(Emphasis added). In the concluding portion of her report, Dr. Dergance stated, “I
believe that Dr. Dandona did not meet the standard of care in treating [Allen, and] I
believe that this could have contributed to worsening of his condition, including
increased suffering of pain and discomfort . . . .” (Emphasis added.) Concerning the
hospital nursing staff, Dr. Dergance found “several inconsistencies” in Allen’s care,
“many of which could have contributed to the progressive decline of his health and
eventual demise.” (Emphasis added.) 
          The causation statements in Dergance’s report—that Allen’s wounds were
“more likely” to persist or worsen, that Dr. Dandona’s breach of the standard of care
“could have contributed” to worsening Allen’s condition, and that “discrepancies” in
care provided by the hospital nursing staff also “could have contributed” to Allen’s
decline—do not satisfy the causation requirement of section 13.01(r)(6). See Bowie
Mem’l Hosp., 79 S.W.3d at 53; see also Hutchinson, 144 S.W.3d at 618 (holding that
“possibilities” described in expert report were conclusory and did not constitute good-faith effort to establish required causal relationship between alleged failure of
physician to treat ulcer and claimed injuries). A report that recites mere possibilities
of a better outcome, as here, without explaining how the defendant caused the injury
alleged, is conclusory and therefore does not comply with the good-faith effort
requirement of the statute, as clarified by Palacios. See Bowie Mem’l Hosp., 79
S.W.3d at 53 (citing Palacios, 46 S.W.3d at 879); Hutchinson, 144 S.W.3d at 617. 
Because Dr. Dergance’s opinions on causation amounted to mere possibilities and not
statements of causation, as to both Dr. Dandona and the hospital, the trial court could
reasonably have concluded that Dr. Dergance’s report did not meet the requirements
of section 13.01(r)(6) of article 4590i. 
          Having determined that the trial court could have concluded that Nurse
McCall’s report did not show that she was a qualified expert and that Dr. Dergance’s
conclusions did not satisfy the causation element, we hold that the trial court did not
abuse its discretion by dismissing Brown’s claims with prejudice on the grounds that
the reports that Brown offered did not represent a good-faith effort to meet the
requirements of article 4590i. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(l); see
Bowie Mem’l Hosp., 79 S.W.3d at 54 (citing same and Palacios, 46 S.W.3d at 880). 
          We overrule Brown’s first issue.
Whether Brown Alleged Claims Beyond Scope of Former Article 4590i
          In her second issue, Brown argues that the trial court abused its discretion by
dismissing all of her claims. Brown contends that, in addition to claims premised on
article 4590i, she also asserted claims beyond its scope and thus exempt from its
requirements. 
          Brown’s pleadings included allegations that Dr. Dandona and the hospital
violated Allen’s patient’s bill of rights. See Tex. Health & Safety Code Ann. §
242.501 (Vernon Supp. 2004-2005) (Resident’s Rights in Convalescent and Nursing
Homes and Related Institutions); Tex. Hum. Res. Code Ann. § 102.003 (Vernon
2001) (Rights of Elderly); 40 Tex. Admin. Code §§ 19.401, 19.701 (Vernon Pamph.
2004). Brown also alleged violations of section 22.04 of the Penal Code. See Tex.
Pen. Code Ann. § 22.04 (Vernon 2003) (Injury to a Child, Elderly Individual, or
Disabled Individual). Dandona and Polly Ryan contend that, in relying on the
preceding statutes, Brown improperly recast her medical malpractice claims to avoid
the requirements of 4590i, including the expert-report requirement. We agree.
          Article 4590i applies to “health care liability claim[s],” which include “any
cause of action against a health care provider . . . for treatment, lack of treatment, or
other claimed departure from accepted standards of medical care or health care or
safety which proximately results in injury to or death of the patient, whether the
patient’s claim or cause of action sounds in tort or contract.” Tex. Rev. Civ. Stat.
Ann. art. 4590i, § 1.03(a)(4) (repealed); see Garland Cmty. Hosp. v. Rose, No. 02-0902, 48 Tex. Sup. Ct. J. 111, 111 n.2, 112, 2004 WL 2480381, at *2 (Nov. 5, 2004)
(quoting same). When the essence of a suit is a health-care-liability claim, which is
therefore subject to former article 4590i and the current version of the MLIIA, well-settled law proscribes “artful pleading” that recasts allegations of negligence by a
health-care provider


 or physician to avoid the requirements of the MLIIA. Garland
Cmty. Hosp., 48 Tex. Sup. Ct. J. at 112, 2004 WL 2480381, at *2 (citing MacGregor
Med. Ass’n v. Campbell, 985 S.W.2d 38, 40 (Tex. 1998); Sorokolit v. Rhodes, 889
S.W.2d 239, 242 (Tex. 1994)). 
          Courts are not bound by the claimant’s allegations in determining whether a
cause of action is a “health care liability claim.” Ponce v. El Paso Healthcare Sys.,
Ltd., 55 S.W.3d 34, 38 (Tex. App.—El Paso 2001, pet. denied) (citing Sorokolit, 889
S.W.2d at 242). That determination depends instead on the underlying nature of the
plaintiff’s claims. Garland Cmty. Hosp., 48 Tex. Sup. Ct. J. at 112, 2004 WL
2480381, at *2 (citing Sorokolit, 889 S.W.2d at 242). The dispositive inquiry is
whether the act or omission alleged “is an inseparable part of the rendition of health
care services”; if it is, the claim is a “health care liability claim.” See Garland Cmty.
Hosp., 48 Tex. Sup. Ct. J. at 112, 2004 WL 2480381, at *2 (citing Walden v. Jeffery,
907 S.W.2d 446, 448 (Tex. 1995)). Contentions that involve “claimed departure[s]
from accepted standards of . . . care” are thus health-care liability claims. See
Garland Cmty. Hosp., 48 Tex. Sup. Ct. J. at 112, 2004 WL 2480381, at *2.
          In Garland Community Hospital, the supreme court concluded that, although
the plaintiff was not hospitalized until after the physician was allegedly negligently
credentialed, the negligent-credentialing claims against a hospital were health-care
liability claims and therefore subject to the requirements of former article 4590i. See
Garland Cmty. Hosp., 48 Tex. Sup. Ct. J. at 111-114, 2004 WL 2480381, at *2-4. 
The court reasoned that the negligent credentialing claims necessarily involved
departures from an accepted standard of care for a hospital. Id. at 114, *4. Claims
that are premised on departures from the standards of medical care, health care, or
safety of a patient are health-care liability claims. See id. at 113-114, *2-*4; Ponce,
55 S.W.3d at 38; Buck v. Blum, 130 S.W.3d 285, 291 (Tex. App.—Houston [14th
Dist.] 2004, no pet.). 
          On thoroughly reviewing Brown’s original petition, we conclude that her claim
is based on a departure from accepted standards of medical care or health care or
safety and is therefore inseparable from her health-care liability claims. Under the
heading “Facts,” Brown alleges that “[d]uring the course of . . . treatment, Emzie
Allen suffered . . . injuries . . . attributable to: severe dehydration, neglect and
negligence. Plaintiff states that specific acts and omissions of the Defendants were
the proximate cause of [the] injuries. . . .” These allegations form the basis of
Brown’s claims against the hospital and Dr. Dandona. Although Brown lists more
specific examples of negligent acts, all relate to alleged failures and omissions in
treating Allen and thus allege departures from accepted standards of medical care or
health care. These allegations, therefore, fall squarely within former article 4590i’s
definition of “health care liability claim.” Tex. Rev. Civ. Stat. Ann. art. 4590i,
§1.03(a)(4) (repealed); see Garland Cmty. Hosp., 48 Tex. Sup. Ct. J. at 112; 2004 WL
2480381, at *2. Accordingly, the trial court properly included Brown’s claims
premised on the patient’s bill of rights among those dismissed with prejudice for lack
of an adequate expert report. 
          We do not decide the portion of Brown’s second issue in which she claims that
her pleadings alleged a cause of action for violations of the Penal Code because
Brown did not preserve this complaint in the trial court and therefore did not provide
the trial court an opportunity to correct the alleged error. See Tex R. App. P.
33.1(a)(1). Because Brown did not bring her complaint to the attention of the trial
court, we cannot review it here. See id. 
          We overrule the portion of Brown’s second issue in which she contends that
her claims of violations of Brown’s patient rights were beyond the scope of former
article 4590i. We decline to address the remainder of Brown’s second issue.
Conclusion
          We affirm the judgment of the trial court.
 

                                                             Elsa Alcala
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.