NUMBER 13-05-00747-CV


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG

 


GRACIE GARCIA, ET AL., Appellants,


v.
 


VICENTE RODRIGUEZ, M.D., Appellee.

 


On appeal from the 148th District Court of Nueces County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Garza and BenavidesMemorandum Opinion by Chief Justice Valdez


 Appellants, "the Garcia family," (1) appeal the trial court's dismissal of their claims
against Vicente Rodriguez, M.D. The Garcia family argues that the trial court abused its
discretion in dismissing the family's claims for failure to file an adequate expert report. 
They contend (1) their expert report complied with article 4590i of the Texas Revised Civil
Statutes; (2) (2) Dr. Rodriguez waived any complaint about the report by failing to timely
challenge its adequacy; (3) the equitable doctrine of laches bars the trial court's dismissal
of their claim; and (4) they should have been granted a grace period to cure any
insufficiencies in the report. We affirm. 

I. Background

 On January 5, 2002, Consuelo Garcia suffered burns from a flash fire from a
barbecue grill. (3) While being treated at Christus Spohn Memorial Hospital in Corpus Christi,
Texas, Garcia developed a pulmonary infection. This infection progressed until she
developed sepsis (a systemic response to infections) that led to multi-organ failure and,
ultimately, caused her death on January 28, 2002. On August 23, 2003, the Garcia family
filed suit against various doctors who had treated Garcia, including pulmonologist Vicente
Rodriguez, M.D. The family alleged that the doctor's medical care caused Garcia's death. 
On February 19, 2004, the Garcias filed an expert report as required by section 13.01 of
the Texas Medical Liability and Insurance Improvement Act. The report was signed by
Nicholas G. Economides, M.D. 

 After the report was filed, the parties engaged in discovery including interrogatories,
requests for disclosure, and depositions. On March 14, 2005, Dr. Rodriguez filed a motion
to dismiss the Garcias' claims with prejudice under former sections 13.01(e) and (l) of the
Act (4) contending that Dr. Economides's report failed to comply with the requirements of
former section 13.01(r)(6). (5) Specifically, Dr. Rodriguez contended that Dr. Economides's
report showed that he was a plastic surgeon, not a pulmonologist, and, therefore, he was
not an "expert" qualified to testify about the standard of care applicable to pulmonologist
as required by section 13.01(r)(5). (6) In response, the Garcias contended (1) that although
Dr. Economides specialized in plastic surgery, his report showed that he routinely treated
burn patients and thoroughly understands the effect burns have upon various organs of the
body (including the lungs), and this experience qualified him to render an opinion; (2) that
the equitable doctrine of laches bars Dr. Rodriguez's objection; and (3) the Garcias should
have been granted a grace period to cure any insufficiencies in the report. 

 The trial court heard Dr. Rodriguez's motion to dismiss on May 16, 2005 and
informed the parties that it would take the motion under advisement. The motion was
subsequently granted on August 17, 2005. The Garcias then filed a motion for new trial
re-urging the same arguments made in their response to Dr. Rodriguez's motion to
dismiss. The trial court denied the motion for new trial and severed the claims against Dr.
Rodriguez from the claims against the remaining doctors in the suit. This appeal ensued. 

II. Analysis

A. Dr. Economides

 The Garcias first argue that the trial court erred in concluding Dr. Economides's
expert report was inadequate and dismissing the family's claim against Dr. Rodriguez. The
Garcias contend the report satisfied the "good faith effort" requirement of former section
13.01. We disagree. 

 Pursuant to former section 13.01(l), the court may grant a motion challenging the
adequacy of an expert report only if the court concludes the report does not represent a
good faith effort to comply with the definition of an expert report. Former Tex. Rev. Civ.
Stat. art. 4590i, § 13.01(l) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351
(Vernon Supp. 2006)). The definition of what constitutes a good faith effort to comply is
very narrow, however. American Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46
S.W.3d 873, 879 (Tex. 2001); Hansen v. Starr, 123 S.W.3d 13, 19 (Tex. App.-Dallas 2003,
pet. denied). A good faith effort always produces a report that satisfies all the statutory
requirements of an expert report. Id. 

 We review a trial court's order dismissing a claim for failure to comply with section
13.01's expert report requirements under an abuse of discretion standard. See Bowie
Mem'l Hospital, v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). When reviewing matters
committed to the trial court's discretion, we may not substitute our own judgment for that
of the trial court. See Bowie, 79 S.W.3d at 52. If the trial court determines the expert
report lacks any of the necessary statutory elements, it is not an abuse of discretion for the
trial court to dismiss the plaintiff's claims. Hansen, 123 S.W.3d at 20. 

 For a document to be considered an "expert report" for the purposes of section
13.01, it must be rendered by someone qualified to testify as an expert in the relevant
medical subject area. See Chisholm v. Maron, 63 S.W.3d 903, 907 (Tex. App.-Amarillo
2001, no pet.). The report itself must show that the expert is qualified. See Hansen, 123
S.W.3d at 20 (holding that expert executing report must demonstrate qualifications "within
the document itself"); Chisholm, 63 S.W.3d at 907 (same); Schorp v. Baptist Mem'l Health
Sys., 5 S.W.3d 727, 732 (Tex. App.-San Antonio 1999, no pet.) (holding that report
omitting expert's name and qualifications did not meet requirements of section 13.01(d) of
article 4590i and therefore did not meet requirements of section 13.01(r)(6)). In
determining whether the purported expert is qualified to offer an opinion, the court may
consider whether the expert (1) is board certified or has other substantial training or
experience in the area of medical practice relevant to the claim, and (2) is actively
practicing medicine in rendering medical care services relevant to the claim. 

 Dr. Economides has been licensed to practice medicine since 1976. He completed
his plastic surgery residency at the University of Tennessee in 1981 and received his board
certification from the American Board of Plastic Surgery in 1983. Dr. Economides has
been on active staff at Baptist Memorial Hospital in Memphis, Tennessee since 1981. On
page one of his report, he states that he specializes in plastic and reconstructive surgery
and that he "has treated numerous burn patients in the past." His curriculum vitae shows
that he has published articles pertaining to the treatment and reconstruction of burn
patients and has given a videotape presentation on "burned neck reconstruction." It also
shows that he is licensed to practice medicine in four states: Arkansas, Ohio, Tennessee,
and Mississippi. 

 Dr. Economides opines that "negligence occurred when the physicians and nurses
responsible for [Conseulo Garcia] failed to properly treat her pulmonary complications,
including not performing a tracheostomy within 7-10 days of the initial and temporary
intubation which was placed on the first day of the burn." He further states that the
standard of care for a pulmonary doctor who is consulted for pulmonary complications
related to a burn requires that the pulmonary specialist have an understanding of the
effects that burns have on the body, specifically the lungs. The pulmonary doctor,
according to Dr. Economides, must closely monitor the burn patient's fluid balance and be
able to recognize that a burn patient who has been intubated for more than seven days
must receive a tracheostomy to reduce dead space, which will allow for improved
ventilatory efficiency. He concludes that Dr. Rodriguez deviated from the standard of care
by continuously ignoring the absolute need for the tracheostomy. 

 Nothing in the report, however, shows that he is qualified to render an expert opinion
in the area of pulmonology. Although the report indicates that he has experience in
treating burn patients, nothing within the four corners of the his report demonstrates how
he gained the experience and/or training that made him qualified to render an opinion on
the accepted standards of care for pulmonology. Indeed, the only statement within his
report that directly comments on his qualification to offer an expert opinion in this matter
is the following: "My speciality is plastic and reconstructive surgery. I am currently
practicing and I was practicing in the year 2002. I have treated numerous burn patients in
the past and I still do currently." The fact that Dr. Economides took part in the care of
patients like Garcia does not impart the necessary qualifications to state that Dr. Rodriguez
deviated from a standard of care by ignoring the need to conduct a tracheostomy. See
Broders, 924 S.W.2d at 153 (stating rule 702 requires that experts be qualified "by
knowledge, skill, experience, training, or education," and that their testimony assist the trier
of fact regarding the specific issue before the court). Under his report, Dr. Economides
may well be qualified to render an opinion on the reconstruction of burn patients through
plastic surgery, nothing in his report, however, indicates that he is familiar with the
procedures used by Dr. Rodriguez in treating Garcia, nor does it state that he has
knowledge of the accepted standards of medical care in the diagnosis, care, and treatment
acceptable in the field of pulmonology. Moreover, the report fails to show that he is
qualified on the basis of training or experience to offer an expert opinion regarding those
accepted standards of medical care. 

 The Garcias rely on the Texas Supreme Court's holding in Roberts v. Williamson,
111 S.W.3d 113, 122-23 (Tex. 2003), to demonstrate that expert testimony does not
necessarily need to come from a specialist involved in the same field as the defendant
doctors. In Roberts, a pediatrician was allowed to testify regarding the causation of a
child's neurological injuries. Id. at 122. That pediatrician, however, had several relevant
certifications related to neurology, had studied the effects of pediatric neurological injuries,
and had extensive experience advising parents about the effects of those injuries. Id. The
pediatrician made his evaluation of the patient's injuries based on his own experience,
training, and education, as well as the patient's medical records, advice from another
pediatric neurologist, and several peer-reviewed medical-journal articles and textbooks on
pediatric neurology. Id. In this case, Dr. Economides's report does not state that he has
any personal experience with or substantive study of pulmonology, nor does his report
indicate that he had any current relevant certifications. 

 In addition to citing Roberts, the Garcias rely on a rule recognized by Blan v. Ali, 7
S.W.3d 741 (Tex. App.-Houston [14th Dist.] 1999, no pet.) for their contention that Dr.
Economides is qualified. In that case, the court held that a neurologist was qualified to
testify regarding the standard of care applicable to any physician who undertakes to treat
and care for a patient suffering from a stroke along with the neurological complications of
lupus cerebrids. Id. at 746-47. The court noted, "[A] medical witness who is not of the
same school of practice may be qualified to testify if he or she has practical knowledge of
what is usually and customarily done by other practitioners under circumstances similar to
those that confronted the defendant charged with malpractice." Id. at 745. "If a subject of
inquiry is substantially developed in more than one field, a qualified expert in any of those
fields may testify." Id. (emphasis in original). 

 Here, however, Dr. Economides never states that the area of pulmonology is
substantially developed in the field of plastic and reconstructive surgery or, as noted above, 
that he has practical knowledge of what is usually done by a pulmonologist who also treats
burn patients. Dr. Economides's report is simply silent on this issue. This Court will not
automatically assume, without any evidence indicating otherwise, that the two fields are
so interrelated that a qualified expert in any of those fields may testify. See Olveda, 141
S.W.3d at 682-83. 

 Because Dr. Economides's report did not demonstrate his expertise and therefore
did not show that he was qualified to express his opinions on standard of care, breach, and
causation, the trial court could have concluded that Dr. Rodriguez's report did not
constitute a good-faith effort to comply with the requirements of former 4590i §§ 13.01(r)(5)
and (6). See In re Windisch, 138 S.W.3d 507, 514 (Tex. App.-Amarillo 2004, orig.
proceeding); Hansen, 123 S.W.3d at 19-20; Chisholm, 63 S.W.3d at 906-08; Schorp, 5
S.W.3d at 732. Because that reason alone suffices to support the trial court's exercise of
discretion, we need not decide whether Dr. Rodriguez's remaining challenges to Dr.
Economides's report were meritorious. 

B. Waiver

 The Garcias further argue that the trial court erred in granting Dr. Rodriguez's
motion to dismiss because the doctor waived his right to complain about the adequacy of
the report. Specifically, the Garcias allege that because Dr. Rodriguez waited over a year
before filing his motion to dismiss, and because substantial discovery (7) had already been
completed, Dr. Rodriguez waived his right to complain about any inadequacies in their
expert report. 

 We note first that the Garcias did not raise the issue of waiver in their responses to
the motion to dismiss, nor did they raise the issue in their motion for new trial. In reviewing
the trial court's judgment, we may only consider what was before the trial court at the time
it made its decision. See Hansen, 123 S.W.3d at 18; Thompson v. Haberman, 739 S.W.2d
71, 72 (Tex. App-San Antonio 1987, orig. proceeding). Because the Garcias did not
assert waiver in their responses, and the trial court could not have addressed the argument
when it dismissed their claims, we are precluded from considering the argument. Hansen,
123 S.W.3d at 18. 

 Moreover, the threshold for establishing waiver of a defendant's motion to dismiss
a medical malpractice suit under section 13.01(e) of former article 4950i is high. In
Jernigan, the plaintiff timely filed expert medical reports, but the defendant waited over 600
days to move for dismissal based upon the plaintiff's failure to file an adequate expert
medical report. Jernigan v. Langley, 111 S.W.3d 153, 157 (Tex. 2003) (per curiam). The
supreme court held that, "the mere fact that a defendant waits to file a motion for dismissal
under section 13.01(e) is insufficient to establish waiver unless the defendant's silence and
inaction shows an intent to yield the right to dismissal based on the report's insufficiency." 
Id. The Garcia family has not shown how Dr. Rodriguez's actions or inactions evidences
an intent to yield his right to seek dismissal based on the report's insufficiency. 

C. Laches 

 The Garcia family further argues that the equitable doctrine of laches barred the trial
court's dismissal of their claim. The Garcias contend that Dr. Rodriguez should have
informed them within the 180 day deadline that they had failed to file an adequate expert
report. (8) We disagree. 

 First, we note that no Texas court has applied the doctrine of laches to delays in
pursuing a motion to dismiss on the basis of 4590i expert report. Second, section 13.01
provides no time limitation for challenging the sufficiency of an expert report. To read into
the statute an obligation on the part of a defendant to point out the deficiencies in an expert
report before the expiration of 180 days is, in effect, judicially adding language to the
statute, which we decline to do. See Rosa v. Caldwell, 159 S.W.3d 695, 700 (Tex.
App.-Amarillo 2004, pet. denied); See Rosa v. Caldwell, 159 S.W.3d 695, 700 (Tex.
App.-Amarillo 2004, pet. denied); Doades v. Syed, 94 S.W.3d 664, 672 (Tex. App.-San
Antonio 2002, no pet.); Gonzales v. El Paso Hosp. Dist., 68 S.W.3d 712, 717 (Tex. App.-El
Paso 2001, no pet.). (9) 

D. Grace Period 

 Finally, we conclude that the district court did not abuse its discretion in granting Dr.
Rodriguez's motion to dismiss and refusing to grant the Garcias a thirty-day grace period.
See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(g). "[A] section 13.01(g) grace period
determination is reviewed under an abuse of discretion standard." Walker v. Guiterrez, 111
S.W.3d 56, 63 (Tex. 2003). "Section 13.01(g) requires a trial court to grant a grace period
if, after hearing, 'the court finds that the failure of the claimant or the claimant's attorney
was not intentional or the result of conscious indifference but was the result of an accident
or mistake.'" Id. (quoting Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(g)). Although some
mistakes of law may negate a finding of intentional conduct or conscious indifference,
entitling the claimant to a grace period under section 13.01(g), not every act of a defendant
that could be characterized as a mistake of law is a sufficient excuse. Id. at 64. "In
determining whether the failure to file adequate reports was due not to intentional disregard
or conscious indifference but to accident or mistake, we must look to the knowledge and
acts of the claimant." Id. 

 "[A] party who files suit on claims subject to article 4590i is charged with knowledge
of the statute and its requirements." Id. In an affidavit filed attached to the Garcias' motion
for new trial, the Garcias' attorney stated that he "attempted to file and serve a
comprehensive report that fully satisfied all of the requirements of article 4590i," and that
"any failure to fully satisfy such requirements was neither intentional nor the result of
conscious indifference, but resulted from accident or mistake." (10) The affidavit, however,
is silent as to the exact nature or type of mistake allegedly committed by the attorney. It
is well established that a mere "belief" that a report complies with the statutory
requirements does not establish a "sufficient excuse" necessary to support a finding that
a party made a mistake of law, nor does it negate a finding of "intentional or conscious
indifference." Id. at 64-65. Thus, based on the record as provided, we cannot conclude
that the trial court abused its discretion in denying appellant's request for a thirty-day grace
period. 

III. Conclusion

 Based on the foregoing, we resolve all issues raised by the Garcia family against
them and affirm the trial court's judgment dismissing their claim against Dr. Rodriguez. 


 _______________________

 ROGELIO VALDEZ,

 Chief Justice



Memorandum Opinion delivered and filed 

this the 30th day of August, 2007.

1. Appellants in this case are Gracie Garcia, Abdon Garcia, J.R., Alfredo Garcia, Donna Garcia, Felipe
Garcia, III, George Garcia, Jessica Garcia, Jesusa Garcia, Joe Jose Garcia, Maria Conseulo Garcia, Maria
Del Jesus Garcia, Norma Garcia, Pete Garcia, Saul Garcia, and Sergio Garcia, individually; all Heirs of the
Estate of Consuelo Garcia, deceased, including, but not necessarily limited to, Gracie Garcia, Felipe Garcia,
III, George Garcia, Jessica Garcia, Jesusa Garcia, Norma Garcia, Pete Garcia, Saul Garcia, and Sergio
Garcia; and all wrongful death beneficiaries of Consuelo Garcia, deceased, including, but not necessarily
limited to, Gracie Garcia, Abdon Garcia, J.R., Alfredo Garcia, Donna Garcia, Felipe Garcia, III, George Garcia,
Jessica Garcia, Jesusa Garcia, Joe Jose Garcia, III, Maria Consuelo Garcia, Maria Del Jesus Garcia, Norma
Garcia, Pete Garcia, Saul Garcia, and Sergio Garcia. In the interest of brevity we will collectively refer to them
as "the Garcia family" or "the Garcias." 
2. Article 4590i was repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen.
Laws 847, 884, and has been re-codified at Tex. Civ. Prac. & Rem. Code ann. § 74.351 (Vernon Supp. 2006)
(effective Sept. 1, 2003). Because the underlying suit was filed on August 23, 2003, all references in this
opinion will be to former article 4590i. 
3. Ms. Garcia suffered burns to over twenty-five percent of her body. 
4. Former Section 13.01(e) stated: 


If a claimant has failed, for any defendant physician or health care provider, to comply with subsection (d) of
this section within the time required, the court shall, on the motion of the affected physician or health care
provider, enter an order awarding as sanctions against the claimant or the claimant's attorney:

 

 (1) the reasonable attorney's fees and costs of court incurred by that defendant. 


 (2) the forfeiture of any cost bond respecting the claimant's claim against that defendant to the extent
necessary to pay the award; and 


 (3) the dismissal of the action of the claimant against the defendant with prejudice to the claim's
refiling. 


 Former Section 13.01(l) provided:


 A court shall grant a motion challenging the adequacy of an expert report only if it appears to the
court, after hearing, that the report does not represent a good faith effort to comply with the definition of an
expert report in subsection (r)(6) of this section. 
5. Former section 13.01(r)(6) defined an expert report as follows: 


 "Expert report" means a written report by an expert that provides a fair summary of the expert's
opinions as of the date of the report regarding applicable standards of care, the manner in which the care
rendered by the physician or health care provider failed to meet the standards, and the casual relationship
between the failure and the injury, harm, or damages claimed.
6. Under former section 13.01(r)(5) an "expert" was defined as: 


 (A) with respect to a person giving opinion testimony regarding whether a physician departed from
accepted standards of medical care, an expert qualified to testify under the requirements of Section 14.01(a)
of this Act; . . . .


 Former Section 14.01(a) stated:


 In a suit involving a health care liability claim against a physician for injury to or death of a patient, a
person may qualify as an expert witness on the issue of whether a physician departed from accepted
standards of medical care only if the person is a physician who: 


 (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time
the claim arose;


 (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the
illness, injury, or condition involved in the claim; and 


 (3) is qualified on the basis of training or experience to offer an expert opinion regarding those
accepted standards of medical care. 
7. The Garcia family cites the following to support their position that Dr. Rodriguez waived his right
to complain about the adequacy of the report by engaging in "extensive" pretrial discovery: (1) Dr. Rodriguez
deposed all fifteen of Conseulo Garcia's children; (2) subpoenaed the medical and employment records of
all fifteen children; (3) designated expert witnesses; (4) supplemented discovery responses over ten times;
(5) filed a supplemental designation of expert witnesses; and (6) produced his experts for deposition. 
8. As a matter of clarity, we note that the Garcias are not arguing that Dr. Rodriguez's challenge to Dr.
Economides's expert report is governed by former section 14.01(e)'s twenty-one day deadline for challenging
an expert's qualifications under that section. See Chisholm v. Maron, 63 S.W.3d 903, 908 (Tex.
App.-Amarillo 2001, no pet.) (noting the difference between a section 14.01 challenge to an expert's
qualifications and a challenge to a plaintiff's compliance with section 13.01's expert report requirements, and
holding that the time limits imposed by section 14 do not apply to section 13).
9. We note that the current statutory scheme imposes on the defendant a twenty-one day deadline for
challenging an expert's report. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2006) (providing
that "each defendant physician or health care provider whose conduct is implicated in a report must file and
serve any objection to the sufficiency of the report not later than the 21st day after the date it was served,
failing which all objections are waived."). The previous statutory scheme, however, did not impose such a
deadline.
10. In similar fashion, the Garcia's initial motion requesting a grace period stated the following: 


 Plaintiff's counsel believed at the time of filing Dr. Economides's report that it satisfied all of
the requirements of an expert report. It if failed to do so, which plaintiff's dispute, any such
failure was the result of accident or mistake, and not the result of conscious indifference.