**Valerie BRYAN, Appellant**

v.

**Dr. Denton WATUMULL, Appellee.**

**No. 05–06–00018–CV.**

Court of Appeals of Texas, Dallas.

July 24, 2007.

Denton Watumull. In seven issues, she argues jury charge error, legal and factual sufficiency, improper exclusion of evidence, and erroneous dismissal of certain claims. For the reasons stated below, we affirm the trial court's judgment.

## PROCEDURAL HISTORY

■ This medical malpractice case was brought by appellant against appellee based on his alleged failure to obtain informed consent before performing a surgical procedure to address symptoms of carpal tunnel syndrome. The lawsuit was filed on September 5, 2002. Because appellant's claim was filed before the repeal of article 4590i of the Texas Revised Civil Statutes, it is governed by the provisions of article 4590i in effect at the time her suit was filed.[1] The trial court granted appellant leave to file an amended pleading adding additional negligence claims. Prior to trial, however, the court dismissed all of appellant's claims except for her claim for lack of informed consent.[2]

Benton Musslewhite, Law Office of Benton Musslewhite, Helen Dryden O'Conor, Houston, Ben C. Martin, Law Offices of Ben C. Martin, L.L.P., Dallas, for appellant.

Cathy F. Bailey, Steed Flagg, LLP, Diana L. Faust, R. Brent Cooper, Michelle E. Robberson, Devon Joy Singh, Cooper & Scully, P.C., Dallas, for Dr. Denton Watumull.

Before Justices MORRIS, FRANCIS, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

Valerie Bryan appeals an adverse medical malpractice jury verdict in favor of Dr.

The trial court granted a directed verdict in favor of appellee on the issues of

1. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, repealed and recodified by Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 23.02(a), (d), 2003 Tex. Gen. Laws 864, 884, 898–99 (adopting chapter 74 of the Texas Civil Practice and Remedies Code, applicable only to actions filed on or after September 1, 2003, and continuing prior law in effect for actions filed before that date).

2. There is no written dismissal order in the clerk's record, but according to the civil docket sheet, on August 18, 2005, several weeks before trial, the trial court granted appellee's motion and dismissed "everything" except for appellant's lack of informed consent claim. The general rule is that a docket entry forms no part of the record which may be considered; it is a memorandum made for the clerk's and the trial court's convenience. *Daniel v. Falcon Interest Realty Corp.*, 190

S.W.3d 177, 188 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *Guyot v. Guyot*, 3 S.W.3d 243, 246 (Tex.App.-Fort Worth 1999, pet. dism'd). It cannot be used to show the existence of an order or judgment. *See Guyot*, 3 S.W.3d at 246–47. In this case, however, the trial court's final judgment dismissed *all* of appellant's claims against appellee with prejudice. Consequently, we may review appellant's contentions concerning the trial court's dismissal of her claims. *See N–S–W Corp. v. Snell*, 561 S.W.2d 798, 799 (Tex.1977) (stating that docket entry cannot be used to contradict or prevail over final judicial order); *Nine Greenway Ltd. v. Heard, Goggan, Blair & Williams*, 875 S.W.2d 784, 787 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (stating that written judgment controls over the court's oral pronouncements).

malice and gross negligence, and the jury returned a take-nothing verdict in favor of appellee on the informed consent claim. The trial court rendered judgment for appellee on September 18, 2005 based on the jury's verdict.

## DISCUSSION

### Jury Charge

In her first issue, appellant claims the trial court committed harmful error in submitting jury question number one and the accompanying instruction on the legal requirements of informed consent because it misstated the law, misled the jury, improperly commented on the evidence, and probably caused the rendition of an improper verdict.

The standard of review for alleged jury charge error is abuse of discretion. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex.2006); *Steak & Ale of Tex., Inc. v. Borneman*, 62 S.W.3d 898, 904 (Tex.App.-Fort Worth 2001, no pet.). A trial court abuses its discretion by acting arbitrarily, unreasonably, or without consideration of guiding principles. *Borneman*, 62 S.W.3d at 904.

When submitting the jury charge, a trial court is afforded more discretion when submitting instructions than when submitting questions. *Borneman*, 62 S.W.3d at 904; *Wal–Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex.App.-San Antonio 1998, pet. denied). However, the discretion afforded during the submission of instructions is not absolute. *See* TEX.R. CIV. P. 277. According to rule 277,

a trial court must submit instructions "as shall be proper to enable the jury to render a verdict." *Id.*

For an instruction to be proper, it must: (1) assist the jury, (2) accurately state the law, and (3) find support in the pleadings and evidence. TEX.R. CIV. P. 277, 278; *Borneman*, 62 S.W.3d at 904. An instruction that misstates the law as applicable to the facts or one that misleads the jury is improper. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex.1973); *Owens–Corning Fiberglas Corp. v. Martin*, 942 S.W.2d 712, 721–22 (Tex.App.-Dallas 1997, no pet.).

The issue of whether a doctor failed to fully inform a patient of the risks of surgery is governed by the Medical Liability and Insurance Improvement Act (MLIIA). TEX.REV.CIV. STAT. ANN. art. 4590i, § 6.02 (Vernon 2002); *Ocomen v. Rubio*, 24 S.W.3d 461, 468 (Tex.App.-Houston [1st Dist.] 2000, no pet.). The MLIIA created the Texas Medical Disclosure Panel to evaluate all medical and surgical procedures, determine if disclosure of risks is required, and if so, determine how much disclosure was required. TEX.REV.CIV. STAT. ANN. art. 4590i, § 6.04(a); *Earle v. Ratliff*, 998 S.W.2d 882, 891 (Tex.1999).[3] If the procedure requires some disclosure of the risks involved in the treatment, it is placed on List A. TEX.REV.CIV. STAT. ANN. art. 4590i, § 6.04; *Earle*, 998 S.W.2d at 891. However, if the Texas Medical Disclosure Panel determines that no disclosure is required, the procedure is placed

---

**3.** In *Earle*, it was undisputed the surgeries performed on appellee were both List A procedures and that appellant warned appellee of all the risks identified by the Texas Medical Disclosure Panel regarding those procedures. 998 S.W.2d at 891. The Texas Supreme Court held the MLIIA does not permit a finding that a physician who made disclosures as

prescribed by the Texas Medical Disclosure Panel was negligent for not disclosing other risks associated with the recommended procedure. *Id.* The court reasoned that to allow such a finding would afford a physician no protection from liability for non-disclosure and the entire purpose of the Texas Medical Disclosure Panel would be thwarted. *Id.*

on List B. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 6.04; *Earle*, 998 S.W.2d at 891.

Both parties agree that the peripheral nerve surgery performed on appellant, a carpal tunnel syndrome and right radial nerve release operation, was a List A procedure requiring certain disclosures. Specifically, according to the Texas Medical Disclosure Panel, appellee was required to disclose the following risks for a peripheral nerve operation: (A) numbness; (B) impaired muscle function; (C) recurrence or persistence of the condition that required the operation; (D) continued, increased, or different pain. *See* 25 Tex. Admin. Code § 601.2(m)(4).

For procedures on List A, the informed consent is "considered effective" if it is in writing and signed by the patient or a person authorized to give the consent and by a competent witness. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 6.06; *Knoll v. Neblett*, 966 S.W.2d 622, 628 (Tex.App.-Houston [14th Dist.] 1998, pet. denied).[4] Advising a patient of risks in compliance with the statute's required disclosure creates a rebuttable presumption the physician was not negligent. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 6.07(a)(1); *Knoll*, 966 S.W.2d at 628. On the other hand, if the procedure is on List A and the written consent does not comply with the statute, the statute creates a rebuttable presumption the physician was negligent in failing to obtain informed consent. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 6.07(a)(2); *Knoll*, 966

S.W.2d at 628. The presumption must be included in the jury charge. *See* Tex.Rev. Civ. Stat. Ann. art. 4590i, § 6.07(a)(2).

At trial, appellant argued appellee was negligent for failing to tell her prior to the surgery that reflex sympathetic dystrophy (RSD)[5] was a potential risk of the surgical procedure. Appellant testified that after the surgery she experienced excruciating pain that eventually spread throughout her entire body and was not aided by pain medication. Two physicians she consulted after the surgery diagnosed her with RSD. Appellant insisted she never would have undergone the operation had appellee explained to her before the surgery that RSD was a risk of the operation.

■ According to the Texas Administrative Code, RSD is not one of the risks that must be disclosed for peripheral nerve surgery. *See* 25 Tex. Admin. Code § 601.2(m)(4). Furthermore, the expert testimony at trial agreed RSD is not included on the List A risks that must be disclosed for carpal tunnel surgery. Therefore, as a matter of law, appellee had no duty to disclose this risk and cannot be held liable for a lack of informed consent based on this risk. Our analysis thus turns to the errors alleged by appellant in the trial court's instruction on informed consent.

The trial court submitted the following instruction on informed consent:

---

**4.** Appellant cites *Knoll* for the proposition that the List A procedures must be in writing. In *Knoll*, however, the court's comment cited by appellant that "[f]or procedures on List A, the informed consent must be in writing," was clearly made in connection with section 6.06, which, as explained above, provides that consent to medical care appearing on List A "shall be considered effective" if it is given in writing. *See Knoll*, 966 S.W.2d at 628.

**5.** According to appellee's trial testimony, RSD is a type of pain syndrome where "the sympathetic nervous system seems to overact and fire and create a feedback with new pain." RSD is a rare complication of carpal tunnel surgery. The most common injuries accredited to RSD are fractures and crush injuries, and strokes are one of the most common causes. Dr. Jonathan Walker, appellant's expert witness, agreed there are no specific tests that can actually diagnose RSD.

Did Dr. Watumull fail to adequately disclose risks and hazards as required by law of the peripheral nerve operation?

The law requires Dr. Watumull to disclose to Valerie Bryan the following risks and hazards regarding a peripheral nerve operation, which includes an open carpal tunnel release and radial nerve release:

a. Numbness
b. Impaired muscle function
c. Recurrence or persistence of the condition that required the operation
d. Continued, increased, or different pain.

The failure of a physician to disclose those risks and hazards on a written form, signed by the person or a person authorized to consent for the patient and a competent witness, is presumed to constitute negligent failure to disclose such risks. This presumption may be overcome if the physician adequately disclosed such risks and hazards in some other manner.

The physician's disclosure of these risks and hazards on a written form, signed by the patient or a person authorized to consent for the patient and a competent witness, is presumed to comply with the legal requirements for informed consent.

■ On appeal, appellant focuses on the following alleged errors in jury question

number one: (1) the trial court's addition of the sentence allowing the physician to disclose the risks "in some other manner;" (2) the trial court's refusal to include an instruction of "medical emergency" in connection with the physician's rebuttal burden; and (3) the trial court's refusal to include the word "specifically" in its charge and instruction.[6]

Here, the trial court's instructions substantially followed the instructions provided by the Texas Pattern Jury Charge (PJC). The trial court based jury question number one on the PJC instruction on informed consent when there is "[n]o emergency or other medically feasible reason for nondisclosure" and the "[d]isclosure [is] not in the statutory form." *See* COMM. ON PATTERN JURY CHARGE, STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGE—MALPRACTICE, PREMISES & PRODUCTS PJC 51.12 (2006). The comment to PJC 51.12 explains it should be used "if the evidence shows that the medical procedure was on the list requiring disclosure (list A) and disclosure is not made in statutory form but there is evidence of disclosure, such as evidence of oral disclosure." *Id.* PJC 51.12 (comment) [7].

Appellant argues PJC 51.12 is in error because its use of the phrase "in some other manner" conflicts with the wording of the statute, which requires the informed consent to be in writing. We believe, however, appellant oversimplifies the informed consent statute. To begin with, the stat-

---

6. Other jury charge errors are alleged in the "issues presented" part of appellant's brief, but they are not supported with appropriate argument or relevant legal authorities. Accordingly, we will not address them. *See* TEX.R.APP. P. 38.1; *Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex. 1994); *Devine v. Dallas County,* 130 S.W.3d 512, 513–14 (Tex.App.-Dallas 2004, no pet.); *Sullivan v. Bickel & Brewer,* 943 S.W.2d 477, 486 (Tex.App.-Dallas 1995, writ denied).

7. PJC 51.13 provides a separate informed consent instruction when "the evidence shows that the medical procedure was on the list requiring disclosure (List A) and disclosure was not made but there is evidence that would excuse the failure to disclose, such as an emergency or other medically feasible reason." *See id.* PJC 51.13.

ute does not say the consent must be in writing. Under the informed consent statute, as mentioned previously, informed consent is *considered effective* if it is in writing and signed by the patient or a person authorized to give the consent and by a competent witness. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 6.06. The reason the statute discusses a written consent form is because the physician is given a presumption of non-negligence if he can prove the consent form was in writing, signed by the patient, and in compliance with the disclosures required by List A. *See id.* § 6.07(a)(1). If the physician cannot prove these things, a rebuttable presumption of negligence must be included in the jury charge. *See id.* § 6.07(a)(2).

■ In addition to providing for a rebuttable presumption of negligence, section 6.07(a)(2) also states that "failure to disclose may be found not to be negligent if there was an emergency or if for some other reason it was not medically feasible to make a disclosure of the kind that would otherwise have been negligence." *See id.* Appellant challenges the trial court's refusal to include an instruction that the presumption could be overcome if there was an emergency or for some other reason disclosure was not medically feasible, which appellant claims are the only means by which a physician can overcome the presumption of negligence. Although we are aware of no published case authorities construing this particular provision, based on the wording of the statute, we conclude the trial court properly instructed the jury, in compliance with the PJC, that the presumption of negligence can be rebutted if the physician demonstrates disclosure was made in some other manner, which can include evidence of oral disclosure. *See* Comm. on Pattern Jury Charge, State Bar of Texas, Texas Pattern Jury Charge—

Malpractice, Premises & Products PJC 51.12 (2006).

■ The general rule is that a presumption may be rebutted by introducing evidence contrary to the presumed issue. *Technical Chem. Co. v. Jacobs,* 480 S.W.2d 602, 606 (Tex.1972). When any type of contrary evidence has been produced, the issue is then ripe for submission to the jury. *Gen. Motors Corp. v. Saenz,* 873 S.W.2d 353, 359 (Tex.1993). In the present case, appellee rebutted the presumption of negligence by offering testimony concerning oral disclosure of statutory risks not mentioned in the written consent form. After appellee created the necessary fact issue, the trial court properly submitted PJC 51.12. Therefore, the instruction submitted to the jury accurately stated the law, and it was well within the trial judge's discretion to submit such an instruction. *See Plainsman Trading Co. v. Crews,* 898 S.W.2d 786, 791 (Tex.1995); *Allen v. Allen,* 966 S.W.2d 658, 660 (Tex. App.-San Antonio 1998). By contrast, the instruction proffered by appellant oversimplified the informed consent statute by suggesting that the presumption could be overcome only if there was an emergency or if for some other reason disclosure was not medically feasible. We conclude the trial court did not abuse its discretion either in submitting the instruction on informed consent or in rejecting appellant's proposed instruction.

■ Appellant also argues that the first sentence of question number one should have included the word "specifically." According to appellant, the first sentence should have read: "The law requires Dr. Watumull specifically to disclose to Valerie Bryan the following risks and hazards regarding a peripheral nerve operation, which includes a carpal tunnel release and radial nerve release." Appellant's proposed jury instruction, however, did not

include the word "specifically." *See* TEX.R. CIV. P. 278; *Kennedy Ship and Repair, L.P. v. Pham,* 210 S.W.3d 11, 27 (Tex. App.-Houston [14th Dist.] 2006, no pet.) (to preserve error, complaining party must tender a written request to the trial court for submission of the instruction, which is in substantially correct wording). Nor did appellant object at the charge conference to the lack of the word "specifically." A complaint about a defective jury instruction is waived unless specifically included in the objections to the charge. *Willis v. Donnelly,* 199 S.W.3d 262, 275 (Tex.2006) (citing TEX.R. CIV. P. 274). Accordingly, the issue was not preserved for review. Appellant's first issue is overruled.

### Legal Sufficiency

In her second issue, appellant claims the trial court erred in not granting appellant's motion for instructed verdict because the evidence is legally insufficient to support the jury's response to question number one; therefore, we should reverse and render judgment for appellant on liability.

■■■■■　When a party with the burden of proof challenges the legal sufficiency of an adverse finding, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001); *Long v. Long,* 196 S.W.3d 460, 466 (Tex.App.-Dallas 2006, no pet.). In reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the finding, then we will examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem.,* 46 S.W.3d at 241; *Long,* 196 S.W.3d at 466. The issue should be sustained only if the contrary proposition is

conclusively established. *Dow Chem.,* 46 S.W.3d at 241; *Long,* 196 S.W.3d at 466.

■■■■■　Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *City of Keller v. Wilson,* 168 S.W.3d 802, 819 (Tex. 2005). They may choose to believe one witness and disbelieve another. *Id.* Reviewing courts cannot impose their own opinions to the contrary. *Id.* Most credibility questions are implicit rather than explicit in a jury's verdict. *Id.* Thus, reviewing courts must assume jurors decided all of them in favor of the verdict if reasonable human beings could do so. *Id.* It is not necessary to have testimony from both parties before jurors may disbelieve either party. *Id.* at 819–20. Jurors may disregard even uncontradicted and unimpeached testimony from disinterested witnesses. *Id.* at 820.

As mentioned previously, the type of operation performed on appellant required disclosure of the following risks: (1) numbness; (2) impaired muscle function; (3) recurrence or persistence of the condition that required the operation; (4) continued, increased, or different pain. The written disclosure and consent form signed by appellant contains a list of specific "risks and hazards" that "may occur in connection with this particular procedure," including "pain syndromes," "recurrence of symptoms," and "damage to blood vessels, nerves or tendons (numbness or weakness)." [8]

■■■■　Appellant argues that the failure to check any of the boxes next to the list of specific risks proved, as a matter of law, that her consent was not in compliance with the statute. The statute, however, does not mandate any particular format

---

**8.** The other "risks and hazards" disclosed on the consent form are "wound pulling apart (dehiscence)," scarring, "painful incision," "failure of surgery to relieve symptoms," bleeding, infection, stiffness, and "other complications."

for the consent form and does not require the boxes to be checked for the form to comply with the statute. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, §§ 6.05, 6.06. Moreover, the testimony of appellee and his medical assistant, Andrea Tanner, indicated that the boxes on the consent form need be checked only if a choice had to be made, e.g., whether the surgery was on the right or left arm and whether it was open or endoscopic. Here, checkmarks are found in only three places on the consent form, indicating the surgery would be on the right arm, that it would be open as opposed to endoscopic, and that the use of blood and blood products was authorized. Appellee testified that no boxes were checked on the list of specific risks because they described complications that apply "to every single carpal tunnel operation." Appellee and Tanner also testified that appellant would have been told, like all patients, that all of the risks listed on the form applied to her particular surgery.

Appellant also argues that even if the disclosures on the written consent form adequately addressed the first two statutory risk factors, there is no mention of "impaired muscle function" and "continued, increased, or different pain." At trial, there was conflicting testimony presented concerning the extent to which these risks were discussed with appellant prior to the surgery. Appellant testified that, when she first saw appellee in June of 2000, appellee told her she needed "carpal tunnel and radial nerve release" surgery on her right arm. When asked what he told her about these operations, appellant testified that appellee never discussed the consent form with her and all he ever told her was that she might have some arthritis and might continue to experience the same pain she had before the operation. He told her he would use a local anesthetic and no one ever explained to her the risk of pain syndromes, recurrence of symptoms, bleeding or infection, or RSD. Appellant admitted that she placed her initials on the form indicating her consent to the use of blood and blood products if they were needed. But appellant also claimed Tanner told her that because the boxes on the consent form next to the specific risks and hazards of the surgery were not checked, those risks did not apply to her surgery. She testified that neither Tanner nor anyone else on appellee's staff witnessed her signature on the consent form.

Dr. Jonathan E. Walker, a board certified neurologist with training in psychiatry and clinical physiology, was appellant's sole expert witness at trial. He is not a surgeon and has never performed carpal tunnel surgery. He has been a pain management specialist for "about 10 years," and this pain management expertise includes RSD and carpal tunnel syndrome. He testified that appellee was negligent in failing to obtain informed consent for this procedure. Walker also testified that RSD is one of "the most common serious" complications of carpal tunnel surgery, that appellant has RSD, that appellant's RSD was caused by the carpal tunnel and radial nerve release surgery performed by appellee, and appellee's failure to secure adequate informed consent prior to the surgery was a proximate cause of appellant's condition. Walker testified that appellee failed to inform appellant of the risk of RSD and merely warning her of the risk of "pain syndromes" is inadequate unless you "amplify what a pain syndrome is" and mention "this particular pain syndrome," i.e., RSD, "which is fairly common and severe and disabling" and then follow up with either an oral or written explanation of RSD. He did not believe the term "pain syndrome" was adequate to warn someone of RSD because it "deemphasizes the severity" of the pain.

Appellee testified both as defendant and as an expert in obtaining informed consent for the procedure performed on appellant and in diagnosing RSD. He testified that he is board certified in plastic surgery and has a certificate and qualifications for surgery of the hand. Peripheral nerve surgery—the care and treatment of nerve problems in the arms and legs—is an area of special interest. He met with appellant before the surgery and explained the risks and benefits of the operation to her "one-on-one," as he does with all of his patients.

Andrea Tanner told the jury[9] she reviewed the consent form with appellant line-by-line, as she did with all patients, stressing that all of the specific risks listed in the middle of the form applied to her surgery. She said there was no question in her mind that she went over with appellant each of the risks and complications that was listed on the consent form because she did this with all of appellee's patients. Tanner also witnessed appellant sign the consent form both in person and on the consent form, and Tanner's signature appears on the consent form as a witness.

There is no indication in the record that appellee specifically mentioned either RSD or "different pain" to appellant prior to the surgery. We have already noted RSD is not a risk that is required by List A to be disclosed for a peripheral nerve operation. See 25 TEX. ADMIN. CODE § 601.2(m)(4).[10] As for different pain, appellee said that he discussed "pain syndromes" with appellant and he believed his explanation of pain syndromes encompassed both different pain and RSD. He also testified that he advised appellant of the risk of arthritis as a result of the surgery, and appellant's

expert admitted that joint pain was a "different pain than the carpal tunnel pain she came in with." Appellee also believed he went beyond what Texas law required by disclosing the risk of "pain syndromes" because Texas law required only that he disclose continued, increased, or different pain. He made it a practice of telling every patient that surgery could worsen their pain. Regarding pain syndromes, appellee told his patients they are rare, they sometimes occur, they can produce pain out of proportion to the surgery or the underlying problem, and they can be severe.

In addition, there is no indication appellee specifically warned appellant about "impaired muscle function." He insisted, however, that he never took a patient to surgery before going over the risks and complications of the procedure and he never took "a patient to surgery without them understanding the risks." He said he had "no doubt" that he told appellant about the risks and complications. Appellee also testified that, as an expert regarding whether he met the standard of care in obtaining informed consent from appellant, he believed he met the standard of care. There was "absolutely no doubt" in his mind that he went over the risks and complications with appellant. In addition, there was "no doubt" in his mind that he fully complied with Texas law for obtaining informed consent from appellant. Appellee's expert witness, Dr. Jay Boulas, testified, after reviewing the consent form, the office chart, the hospital chart from the surgery, and the deposition testimony of appellee and his office staff, that appellee complied with Texas law and the standard of care in

---

**9.** Andrea Tanner's deposition testimony was read to the jury.

**10.** Appellee's "standard practice" was to not mention RSD to his patients because "[t]he average layperson does not know the name RSD."

obtaining informed consent from appellant prior to the surgery.

The jury in this case was required to sift through conflicting testimony concerning what was disclosed to appellant in writing and orally prior to the surgery. The jury was entitled to believe either appellant's version of events or appellee's, and it resolved the evidence in appellee's favor. After reviewing the evidence under the appropriate standard of review, we conclude there is legally sufficient evidence to support the jury's adverse finding that appellee obtained appellant's informed consent before performing the surgery and that appellant failed to establish the contrary finding as a matter of law. Appellant's second issue is overruled.

*Factual Sufficiency*

In her third issue, appellant claims the jury's verdict is so against the great weight and preponderance of the evidence that we should reverse and remand for a new trial.

When a party challenges the factual sufficiency of the evidence supporting an adverse finding on which it bore the burden of proof, it must demonstrate the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242; *Ameristar Jet Charter, Inc. v. Cobbs,* 184 S.W.3d 369, 373 (Tex.App.-Dallas 2006, no pet.). Only if we determine, after considering all the evidence, the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust will we set aside the verdict for factual insufficiency. *Dow Chem. Co.,* 46 S.W.3d at 242; *Ameristar Jet Charter,* 184 S.W.3d at 373.

In the present case, after reviewing the conflicting evidence under the appropriate standard, we conclude the evidence does not establish that the jury's adverse finding was clearly wrong or unjust. Having concluded the evidence is factually sufficient to support the jury's adverse finding on the issue of informed consent, we resolve appellant's third issue against her.

*Exclusion of Rebuttal Testimony*

In her fourth issue, appellant claims the trial court erred in excluding certain "rebuttal" testimony that appellant argues should have been admitted in order to rebut any favorable presumption in favor of appellee regarding informed consent. Appellee argues appellant waived this issue because there is no indication in the record she made either an offer of proof or a formal bill of exception or otherwise set forth the excluded evidence. Appellant responds in her reply brief that she filed a formal bill of exception "and attached the deposition excerpts of testimony that [appellant] would have given at trial, and which the [trial] [c]ourt indicated it would not permit at trial."

Prior to trial, the trial court had granted appellant leave to file a first amended original petition asserting additional claims that appellee was negligent in failing to (1) recommend more conservative treatment before performing the surgery and (2) provide adequate follow-up care after surgery, particularly in not diagnosing RSD and commencing immediate treatment. Appellee moved to dismiss these claims pursuant to section 13(e) of article 4590i based on the inadequacy of appellant's expert reports to establish that their author, Dr. Walker, a neurologist and psychiatrist, was not qualified to offer an expert opinion against appellee, a board certified plastic surgeon. Shortly before trial, the court dismissed all of appellant's claims except for lack of informed consent. During the trial, appellant's counsel unsuccessfully sought to elicit testimony from appellant about her increased susceptibility to RSD because of her smoking, history of depres-

sion, the fact that she was a woman, that she had only a "mild" carpal tunnel syndrome condition, and that she did not want to have general anesthesia.

Appellant filed her post-judgment "Formal Bill of Exception with Respect to the Testimony of Valerie Bryan" on November 18, 2005. The stated purpose of appellant's bill was to "make part of the [r]ecord the essential subject of the testimony of [appellant] with regard to the negligence of [appellee] in performing the Carpal Tunnel Syndrome ... operation without failing to provide adequate follow-up care." The bill was supported by highlighted portions of appellant's sworn deposition testimony, which was attached to the bill and incorporated by reference.

To preserve error on appeal, a party must present to the trial court a timely request, motion, or objection, state the specific grounds therefore, and obtain a ruling that appears in the record. Tex. R.App. P. 33.1(a); *Wal–Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex.1999). To preserve factual error that does not appear on the face of the record, an appellant is required to make a formal bill of exception within thirty days of filing the notice of appeal. *See* Tex.R.App. P. 33.2(e)(1); *Smith v. Smith*, 143 S.W.3d 206, 211 (Tex.App.-Waco 2004, no pet.). Here, appellant's bill of exception was timely filed.[11]

Rule 33.2(c), however, also sets forth specific requirements for a formal bill of exception. Formal bills of exception must be presented to the trial judge for his approval and signature. Tex.R.App. P. 33.2(c)(1). If the parties agree as to the contents of the bill, the trial judge must sign the bill and file it with the trial court

clerk. *Id.* at 33.2(c)(2). If the contents are not agreed to by the parties, after notice and hearing, the judge must (1) find the bill is correct, sign it, and file it with the trial court clerk; (2) suggest corrections to the complaining party, and if the complaining party agrees to the corrections, sign and file the bill with the trial court clerk; or (3) if after making suggested corrections, the complaining party will not agree to the corrections, return the bill to the complaining party with the judge's written refusal on it. *Id.* The rule also provides a procedure traditionally referred to as a "Bystander's Bill of Exception," which enables a party to develop a record and place an issue before an appellate court when the party's version of events differs from that of the trial court. *See Thieleman v. State*, 187 S.W.3d 455, 457 n. 2 (Tex.Crim.App.2005); *see also* Tex.R.App. P. 33.2(c)(3).

■ In this case, although the record contains a filed bill of exception, the record does not contain any evidence the bill was presented to the trial court or agreed to by appellee. Moreover, the record lacks any indication that any action was taken on the bill—the docket sheet lacks any indication a hearing was held on the bill, the trial judge's signature is absent from the bill, and there is no indication whether the trial court acted to make any corrections to the bill. *See Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275 (Tex.App.-Amarillo 1988, writ denied) ("A formal bill of exception not approved by the trial court or opposing counsel and not a bystander's bill, is inadequate to preserve an appellate complaint"). Accordingly, we conclude the errors com-

---

**11.** The final judgment in this case was signed on September 19, 2005. On October 19, 2005, appellant filed a motion for judgment notwithstanding the verdict and for new trial. She filed her notice of appeal on December 16, 2005, twenty-eight days after she filed the bill of exception. *See* Tex.R.App. P. 33.2(e)(1).

**517**

plained of in appellant's bill of exception are not preserved for review.

In addition, even if appellant preserved error, we further conclude there was no abuse of discretion. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 906 (Tex.2000). As discussed in more detail below, the trial court acted within its discretion in dismissing appellant's claims that appellee was negligent in deciding to perform the surgery without attempting more conservative treatment and in failing to provide adequate follow-up care. Since the trial court properly dismissed these claims—the basis for the argument raised in appellant's bill of exception—appellant was not entitled to submit evidence in support of them. *See* Tex.R. Evid. 402 (evidence which is not relevant is inadmissible); *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 556 (Tex.1995) (evidence that has no relationship to any issue in the case is irrelevant and therefore inadmissible). Appellant's fourth issue is overruled.

*Dismissal of Appellant's Remaining Claims*

In her fifth issue, appellant claims the trial court erred in dismissing her claims that appellee was negligent in deciding to perform the surgery and in failing to provide adequate follow-up care. Appellee argues the trial court did not abuse its discretion in dismissing these claims with prejudice.

Under section 13.01 of the MLIIA, the trial court must grant a motion challenging the adequacy of an expert report unless the report represents a good faith effort to comply with section 13.01(r)(6)'s definition of an expert report. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(1). In order to constitute a good faith effort under section 13.01(1), an expert report must "discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001). Because the statute focuses on what the report discusses, the only information relevant to the inquiry will be found within the "four corners" of the document. *Id.* at 878.

A trial court's decision to dismiss under section 13.01 is reviewed for abuse of discretion. *Jernigan v. Langley,* 195 S.W.3d 91, 93 (Tex.2006); *Walker v. Gutierrez,* 111 S.W.3d 56, 63 (Tex.2003); *Palacios,* 46 S.W.3d at 877–78; *Hansen v. Starr,* 123 S.W.3d 13, 19 (Tex.App.-Dallas 2003, pet. denied). Under this standard, if the trial court determines the expert report lacks any of the necessary statutory elements, it is not an abuse of discretion for it to dismiss a plaintiff's claims. *Hansen,* 123 S.W.3d at 19; *see also Palacios,* 46 S.W.3d at 878.

For a document to be considered an "expert report" for the purposes of section 13.01, it must be rendered by someone qualified to testify as an expert on the relevant medical subject area. *Hansen,* 123 S.W.3d at 19. The report itself must show the expert is qualified. *Id.* In determining whether the purported expert is qualified to offer an opinion, the trial court may consider whether the expert (1) is board certified or has other substantial training or experience in the area of medical practice relevant to the claim and (2) is actively practicing medicine in rendering medical care services relevant to the claim. *Id.* (citing Tex.Rev. Civ. Stat. Ann. art. 4590i § 14.01(c)). An

expert report must show "within the document itself" that the purported expert is qualified to testify about the particular subject matter on which the opinion is offered. *Id.* at 20; *see also Chisholm v. Maron,* 63 S.W.3d 903, 907 (Tex.App.-Amarillo 2001, no pet.).

■ In this case, appellant's two expert reports and accompanying curriculum vitae show Dr. Walker is board certified in neurology, psychiatry, and clinical neurophysiology. He also belongs to the national registry of "Neurofeedback Providers" and has practiced medicine since 1971. He is licensed to practice medicine in both Texas and Colorado. However, nothing within the "four corners" of the expert reports or the accompanying curriculum vitae show Dr. Walker has any surgical training or experience. In order to demonstrate the expert is qualified, the offering party must establish the expert has knowledge, skill, experience, training, or education regarding the specific issue before the trial court which would qualify the expert to given an opinion on that particular subject. *See Broders v. Heise,* 924 S.W.2d 148, 153–54 (Tex.1996). Appellant has not met this burden. Nor do we find any indication in the reports that Dr. Walker "has knowledge of accepted standards of medial care for the diagnosis, care, treatment of the illness, injury, or condition involved in the claim." *See* Tex. Rev.Civ. Stat. Ann. art. 4590i § 14.01(a)(2). Instead, he flatly asserts appellee's actions fell below the standard of care. Because appellant's expert reports and accompanying curriculum vitae do not show Dr. Walker has any surgical training or experience, the trial court could have concluded the report did not represent a good faith effort to comply with the statutory requirements for an expert report. *See Hansen,* 123 S.W.3d at 20. Therefore, the trial court did not abuse its discretion in granting appellee's motion to dismiss. Appellant's fifth issue is overruled.

Appellant's sixth and seventh issues concern evidence excluded by the trial court relating to her dismissed claims. In her sixth issue, appellant claims the trial court erred in excluding evidence on whether appellee was negligent in deciding to perform the operation and in failing to submit the issue to the jury. In her seventh issue, appellant claims the trial court erred in excluding evidence that appellee was negligent in failing to provide adequate follow-up care and in failing to submit the issue to the jury.

For the reasons previously stated, we conclude that because the trial court properly dismissed these claims, appellant was not entitled to submit evidence in support of them. *See* Tex.R. Evid. 402; *Robinson,* 923 S.W.2d at 556. Appellant's sixth and seventh issues are therefore overruled.

The trial court's judgment is affirmed.