

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-20-00052-CV

———————————————————

CORY RAY SHELBY, Appellant

V.

SHAKKA SHANEAK JAMES, Appellee

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-672025-19

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

Cory Ray Shelby appeals from the entry of a protective order for Shakka Shaneak James under Family Code Section 85.002, which allows a family court to issue a civil protective order upon a showing that a person violated a since-expired protective order while that order was in effect. Tex. Fam. Code Ann. § 85.002. We affirm.

## Brief Background

On June 24, 2019, Fort Worth police arrested Shelby for allegedly assaulting James and putting a gun to her head. That same day, a Fort Worth magistrate issued a 90-day protective order for James under Article 17.292(b) of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 17.292(b) (requiring magistrate to issue short-term protective order when defendant makes appearance after family-violence-related arrest involving use or exhibition of a deadly weapon during assault). The magistrate ordered Shelby not to communicate directly with James or a member of her household, either in general or "in a threatening or harassing manner."

In September 2019, the State charged Shelby with violating the temporary protective order "on or about" July 8, 2019, by intentionally or knowingly communicating with James. *See* Tex. Penal Code Ann. § 25.07(a)(2)(C).

On November 7, 2019, while both criminal charges (aggravated assault with a deadly weapon and violation of a protective order) were still pending, the Tarrant County Criminal District Attorney's Office filed an application for a civil protective

2

order for James in the Tarrant County family district court. The application alleged that Shelby had engaged in family violence under the Family Code "as more specifically set forth in [James's] Supporting Affidavit" attached to the application and incorporated therein. *See* Tex. Fam. Code Ann. § 71.004.

Shelby initially agreed to a civil protective order but then sought and obtained a new trial. He represented himself pro se but asked for appointed counsel or, alternatively, standby counsel. The trial court allowed Shelby's criminal-case counsel to appear as standby counsel but advised Shelby, "This is not the type of case where we appoint counsel. You have to represent yourself or hire your own counsel."

Shelby filed numerous pretrial motions seeking discovery related to his initial arrest and what he alleged were incidents of family violence by James against him. The trial court ruled on some but not all of these motions.

On February 6, 2020, the State filed an amended application seeking a protective order under Family Code Section 85.002; the amended application omitted the allegation that Shelby had engaged in family violence under the Family Code, contending instead only that "[f]amily violence *is alleged to* have occurred" and that while the criminal court's temporary protective order was in effect, Shelby violated its terms by communicating with James. [Emphasis added.] That same day, Shelby signed a document acknowledging that he had received a copy of the amended application.

After a hearing on February 13, 2020—at which the trial court took judicial notice of its file at the State's request and at which the State introduced numerous handwritten letters addressed either to James or another person at her address—the trial court issued a protective order that included the following finding: "The Court finds that there has been a violation of Tex. Fam. Code sec. 85.002[,] specifically that a protective order was in effect at the time of the violation and that the order has expired." However, the court also made findings that family violence had occurred and was likely to re-occur and that Shelby had committed family violence.

Shelby filed a motion for new trial, which was overruled by operation of law; he also filed a request for findings of fact and conclusions of law and a motion to approve a formal bill of exceptions, neither of which the trial court responded to or ruled on.

## Issues on Appeal

Shelby raises seven complaints on appeal: (1) the trial court erred by failing to rule on some of his pretrial motions and by denying others; (2) he is entitled to a new trial because parts of the trial court record are missing; (3) the trial court erred by allowing James to file an amended pleading six days before trial; (4) the trial court erred by ordering him to pay court costs because he is indigent; (5) the trial court erred by failing to appoint him counsel; (6) the trial court erred by allowing his motion for new trial to be overruled by operation of law and by not ruling on his other post-trial motions; and (7) the trial court erred by limiting his cross-examination of James.

4

An overarching theme of his complaints is that the effect of any trial-court errors was to deny him a fair and impartial trial. We address each of his preserved complaints but in a different order from the presentation in his briefing.

**Appointed Counsel**

Shelby complains in his fifth issue that the trial court should have appointed him counsel. There is no constitutional or statutory right to appointed counsel in a Family-Code protective-order proceeding. *Maki v. Anderson*, No. 02-12-00513-CV, 2013 WL 4121229, at *6 (Tex. App.—Fort Worth Aug. 15, 2013, pet. denied) (mem. op.); *Turner v. Roberson*, No. 05-11-01272-CV, 2013 WL 2152636, at *4 (Tex. App.—Dallas May 17, 2013, no pet.) (mem. op.). Although a district court has the inherent authority to appoint counsel to a civil litigant "under exceptional circumstances," *Gibson v. Tolbert*, 102 S.W.3d 710, 712 (Tex. 2003), in the absence of such circumstances, it does not abuse its discretion by refusing to do so. *Read v. TDCJ Policy*, No. 02-20-00039-CV, 2021 WL 1034857, at *2 (Tex. App.—Fort Worth Mar. 18, 2021, no pet.) (mem. op.).

Shelby has failed to show that exceptional circumstances justified the appointment of counsel in this case. Being pro se, indigent, and incarcerated—and facing assistant district attorneys as opposing counsel—does not constitute exceptional circumstances. *See* Tex. Fam. Code Ann. § 82.002 (providing that prosecuting attorney may file protective-order application); *In re T.H.*, No. 02-19-

00300-CV, 2020 WL 5833624, at *2 (Tex. App.—Fort Worth Oct. 1, 2020, no pet.) (per curiam) (mem. op.). We therefore overrule his fifth issue.

**Pretrial Motions and Appellate Record**

Shelby claims in his first and second issues that the trial court erred by failing to rule on several of his pretrial motions and by denying others, thereby denying him due process and preventing him from adequately preparing for trial. He also complains about the lack of a reporter's record from the February 6, 2020 pretrial hearing.

To the extent that these issues request relief we have already denied in ruling on Shelby's presubmission motions in this court, we need not re-address them.[1] Additionally, we do not address Shelby's complaints that raise matters not included in the appellate record, such as alleged ex parte communication and alleged misconduct by the trial judge. *See, e.g.*, *Soto v. Pantalion*, No. 01-20-00321-CV, 2021 WL 2931363, at *2 (Tex. App.—Houston [1st Dist.] July 13, 2021, no pet.) (mem. op.) ("[E]vidence that is not in the appellate record is not properly before this [c]ourt."); *In re G.G.*, No. 02-16-00251-CV, 2017 WL 2807399, at *2 (Tex. App.—Fort Worth June 29, 2017, no pet.) (mem. op. on reh'g).

---

[1]For example, Shelby has complained in several motions filed in this court about the lack of a reporter's record for a February 6, 2020 pretrial hearing. But Shelby did not timely complain in the trial court about the failure to have this hearing recorded; therefore, the complaint is not preserved for our review. *See Ex parte C.A.*, No. 02-19-00434-CV, 2021 WL 832649, at *7 (Tex. App.—Fort Worth Mar. 4, 2021, no pet.) (mem. op.).

Shelby specifically complains about the absence of rulings, or unfavorable rulings, on the following filings: (1) Notice of Intention to Take Deposition on Written Questions for James and applications to take the depositions of James and James's then-minor daughter; (2) Motion for Early Pretrial Conference with the Trial Court Regarding Specific Issues (seeking a hearing on his motion for continuance and discovery-related motions); (3) Motion to Address Court Regarding Inadequate Defense Preparation (seeking materials on a Fort Worth Police Department flash drive as well as access to his own Google Photos account); (4) Request for Access to Google Photos Website to Obtain Evidence (photos and videos purportedly showing that James had physically abused him); (5) Request for Court Appointed Counsel; (6) Request for Collateral and Corollary Services (asking the trial court to print out copies of the reports and photos on the Fort Worth Police Department flash drive so that he could challenge James's credibility and show that she was the antagonist); (7) Motion to Request Electronic Access (asking the trial court to order the Tarrant County Jail to give him access to a computer with an internet connection and a printer "in order to organize and examine videos of" James allegedly assaulting, harassing, and threatening to file false charges against him); and (8) a Request for Disclosure addressed to the prosecuting attorney under Rule 194.4. Tex. R. Civ. P. 194.4.

Shelby argues generally that he would have used the evidence he sought to obtain in discovery to impeach James's credibility and that the trial court's failure to rule on the motions prevented him from making an offer of proof. The record shows

that the trial court granted Shelby at least a two-month continuance[2] and worked with him on obtaining some of the requested documents: "So with regard to the other records that we're going to release, Mr. Shelby, some of them, it looks like, were printed out." But the trial court denied his request to take depositions of James and her minor daughter and denied any discovery from the City of Fort Worth related to an incident between Shelby and James's minor daughter. The trial court also refused to delay the hearing until the Tarrant County Sheriff's Office could bring Shelby's cell phone, which he said he needed to show photographs. *See Martinez v. Martinez*, 52 S.W.3d 429, 431–33 (Tex. App.—Fort Worth 2001, pet. denied) (op. on reh'g) (holding that trial court did not err by refusing to allow protective-order respondent to depose applicant when further continuance would have left applicant unprotected by temporary protective order for seven days before hearing, noting that "[t]he need to conduct discovery is not one of the statutory bases to continue a protective[-]order hearing").

As to the documents Shelby claims he did not get, it is clear from the record that he wanted these documents to challenge James's credibility, to show that the relationship between them involved aggression on her part toward him, and to cast

---

[2]*See* Tex. Fam. Code Ann. §§ 84.001(a), 84.002 (together providing that court must set hearing on application for protective order no later than 14 days after filing unless prosecuting attorney requests specified extension); *Roper v. Jolliffe*, 493 S.W.3d 624, 634–35 (Tex. App.—Dallas 2015, pet. denied) (noting that purpose of protective-order statute is not to remedy past wrongs or punish prior criminal acts but to protect the applicant and prevent future violence).

doubt on whether she had been injured when the criminal protective order was issued; in other words, Shelby sought to challenge the initial, temporary protective order issued by the magistrate. But that protective order was issued based solely on Shelby's arrest, *see* Tex. Code Crim. Proc. Ann. art. 17.292, not on the credibility of James's allegations, *see Roper*, 493 S.W.3d at 635 (noting that Section 85.002 protective order may be issued without determination of liability on an underlying cause of action); *see also* Tex. Fam. Code Ann. § 82.022 (providing that respondent to protective-order application must file a separate application to obtain his own protective order), § 85.003(c) (providing that trial court may not render one protective order that applies to both parties). As to James's allegations in this protective-order suit, the trial court not only had the letters themselves to examine as evidence,[3] it also had the opportunity to view both James's and Shelby's demeanors while testifying.

Thus, to the extent that the trial court's rulings or failure to rule had the effect of denying Shelby access to any discovery that would bear on James's credibility as to whether the assault for which he was arrested actually occurred, on these facts, he cannot show that he was harmed. *See* Tex. R. App. P. 44.1. We overrule his first and second issues.

---

[3]The letters were handwritten, as were the majority of Shelby's filings in the suit.

9

**Amended Pleading**

Shelby contends in his third issue that the trial court erred by allowing James to amend her application before trial, harming his ability to prepare an adequate defense.

Rule 63 allows a party to file an amended pleading that does "not . . . operate as a surprise to the" opposing party, without leave of court, if filed "at least seven days before trial." Tex. R. Civ. P. 63 & cmt.; *Sosa v. Cent. Power & Light*, 909 S.W.2d 893, 895 (Tex. 1995) (explaining that in computing relevant time frame, day of amended pleading's filing is not counted but date of trial is). Thus, James was not required to seek leave to file her February 6, 2020 amended protective-order application before the February 13, 2020 hearing.

Although Shelby contends that the amended application operated as a surprise to him—and he did spend a significant amount of time attempting to develop evidence showing that he did not engage in family violence as defined by the Family Code—the record does not show surprise or that Shelby specifically complained about surprise. While the original application for protective order specifically alleged only that Shelby had committed family violence, it also expressly incorporated by reference James's affidavit, in which she alleged that Shelby had violated the magistrate's temporary protective order. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000) (noting that Texas follows "fair notice" standard for pleadings, which looks to whether pleading alleges sufficient facts for opposing party to prepare a defense). And although at trial Shelby told the trial judge in general

10

that he did not think he had "been afforded the opportunity to prepare an adequate and effective defense," particularly as to the discovery he sought related to his arrest and his relationship with James, in his opening statement he denied violating the magistrate's protective order. Even while also attempting to show that he had not committed family violence at all, Shelby never claimed to be surprised by the allegation in the amended application, nor did he give the judge any specific reason why the amended pleading would have operated to surprise him. Thus, we overrule his third issue. *See Dunnagan v. Watson*, 204 S.W.3d 30, 37–39 (Tex. App.—Fort Worth 2006, pet. denied) (discussing factors to consider in determining surprise, including whether resisting party alleged surprise and unpreparedness to try new cause of action); *Daniels v. Daniels*, No. 02-19-00387-CV, 2021 WL 832648, at *6 (Tex. App.—Fort Worth Mar. 4, 2021, no pet.) (mem. op.).

**Limitation of Cross-Examination**

In his seventh issue, Shelby contends that the trial court deprived him of due process by erroneously limiting his cross-examination of James. Although Shelby did not raise this specific complaint in the trial court, he did respond to the State's objections to his questions by telling the trial court that the State had asked James whether he had assaulted her and whether she had been scared. He also claimed to be "questioning her prior statements" about his arrest "to expose the inconsistency" and attack her credibility. Therefore, to the extent that Shelby sufficiently preserved his complaint for review, we will address it. *See Jackson v. Jackson*, No. 14-07-00917-CV,

11

2009 WL 1124354, at *2–3 (Tex. App.—Apr. 28, 2009, no pet.) (mem. op.). To put his complaint in context, we trace the development of the evidence at trial.

After the trial court admitted the criminal temporary protective order into evidence, Shelby testified that he had been in the Tarrant County Jail pending a charge for aggravated assault with a deadly weapon. When asked whether he had sent James threatening letters while in jail during that protective order's effective dates, Shelby invoked his Fifth Amendment right not to testify. *See, e.g., Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007) (stating premise that trier of fact is free to draw negative inference from Fifth-Amendment invocation). He did the same when asked if he had attempted to contact members of James's household during that time.

James testified that while the protective order was in effect, Shelby contacted her by mail. He continued to send her letters—20 to 30—over the "next five months." The trial court admitted into evidence handwritten letters that James identified as being from Shelby because she was familiar with his handwriting and because they also employed "common speech [he] used in conversation with" her. Shelby did not object to the admission of the letters.

Among the letters admitted were some addressed from Shelby, with a return address at the Tarrant County Jail, to James; as well as some letters from Shelby, again with a return address at the Tarrant County Jail, to James's address with "Tiffany/Jessica" James and Real Estate Investors listed as the addressees. The trial court also admitted three letters addressed to James at the same address, with Louis

12

Hernandez, Michael Donahue, and Christopher Newhart, respectively, listed as senders with the Tarrant County Jail address as the return address. Several of these letters were postmarked in June, July, or August 2019.

Shelby tried to cross-examine James about the events underlying his arrest and the issuance of the criminal protective order; when the trial court sustained an objection that his questioning exceeded the scope of direct examination because the focus of the trial was whether he had violated the protective order, not whether it was valid, Shelby explained only that he wanted to question James about (1) why the Fort Worth Police Department did not appear to have records of her calling to complain about an assault and (2) whether she had been credible in making her police report.

The trial court allowed Shelby to ask some questions in this vein. For example, Shelby was able to ask James whether she told the 911 operator certain details, and whether she told an officer and swore in an affidavit that Shelby had driven the barrel of a gun "into the side of [her] head." But after James answered the question about what she had stated in her affidavit to police, the State objected "to the relevance of this line of questioning." The trial judge sustained the objection and admonished Shelby, "the issue today is was there an emergency ex parte protective order, and did you violate the emergency ex parte protective order."

As with Shelby's complaints about his access to pretrial discovery, he contends that by prohibiting him from asking further questions of James about the events surrounding his arrest, as well as questions about their relationship before that time,

13

the trial court hampered his ability to show that James's testimony was not credible, as in his words "the [c]ourt [was] depending upon her testimony as to whether or not that . . . [was his] handwriting or whether or not [he] actually sent the letters." But as we have pointed out, the trial court had the opportunity to observe both Shelby and James testify, it was able to observe and weigh the admitted letters themselves, and it allowed Shelby to ask James some questions about their past relationship, particularly whether she had lied about calling the police on him. *See Merrifield v. Seyferth*, 408 S.W.2d 558, 560 (Tex. App.—Dallas 1966, no writ) ("Although wide latitude is allowed a party to cross-examine an adverse witness in order to show interest, bias, or prejudice to affect his credibility, and the only limitation is that of relevancy, . . . this valuable right is subject to that limitation and 'confers no right upon a litigant to examine a witness upon matters which are irrelevant and immaterial.'" (quoting *Mena v. Byers*, 237 S.W. 330, 331 (Tex. App.—El Paso 1922, no writ)). Thus, we conclude that harm is not shown on this record. *See* Tex. R. App. P. 44.1(a). We overrule Shelby's seventh issue.

**Court Costs**

Shelby complains in his fourth issue about the trial court's imposition of $445 in "costs of court and service fees" against him. As James concedes, because Shelby filed an uncontested affidavit of indigency, the trial court abused its discretion by awarding costs to James in the judgment. *See Campbell v. Wilder*, 487 S.W.3d 146, 152 (Tex. 2016). Thus, we will modify the judgment to delete those costs.

14

**Post-Trial Motions**

Finally, in his sixth issue, Shelby contends that the trial court erred by failing to expressly rule[4] on his post-trial motions: a motion for new trial, request for findings of fact and conclusions of law, and application for approval of a formal bill of exceptions.

### New-Trial Motion

In his motion for new trial, Shelby again complained about the trial court's refusal to appoint him counsel. He also asserted that the trial judge "held meetings with [his] appointed counsel over his criminal case along with two other judges" and that as a result, he "believe[d] information regarding his criminal defense was shared without his consent with said judges rendering [the protective order's trial judge] impartial [sic] towards" him. Shelby alleged that his criminal-case attorney, while acting as standby counsel in this case, gave him "ill-advised counsel and demanded he plea[d] the 5th to questions [Shelby] wished to answer truthfully." Shelby also claimed that counsel demanded he refrain from giving testimony "against [his] good will."

Shelby further alleged that new evidence had come to light: that a woman who had lived with him at the address to which he sent James letters—who went by "the alias Jessica and Tiffany," but who was gone when he was arrested and whose location

---

[4]He complains in one part of his brief that the trial court refused to rule on his motion for new trial but in another that the trial court allowed it to be overruled by operation of law.

15

was therefore unknown to him—would testify that James had moved out of the same address but kept the mailbox key. Finally, Shelby raised the discovery, continuance, amended pleading, and limitation of cross-examination complaints that we have already addressed.

To the extent that we have already rejected complaints included in Shelby's motion for new trial, we hold that the trial court did not abuse its discretion by denying a new trial for those reasons. *See In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (stating standard of review for new-trial denial); *B. Gregg Price, P.C. v. Series 1-Virage Master, LP*, No. 01-20-00474-CV, 2021 WL 3204753, at *18 (Tex. App.—Houston [1st Dist.] July 29, 2021, no pet. h.) (mem. op.).

We also conclude that the trial court did not abuse its discretion by denying a new trial for alleged ineffectiveness of standby counsel. *See Perez v. State*, 261 S.W.3d 760, 766–68 (Tex. App.—Houston [14th Dist.] July 24, 2008, pet. ref'd) (holding that once defendant insisted upon proceeding pro se, even with standby counsel, he could no longer claim ineffective assistance); *see also Roberson v. State*, No. 02-17-00042-CR, 2018 WL 651219, at *5 (Tex. App.—Fort Worth Feb. 1, 2018, pet. ref'd) (mem. op., not designated for publication) (relying on *Perez* to hold that claim of ineffective assistance of standby counsel is "not legally cognizable"); *Rodriguez v. State*, 491 S.W.3d 18, 29 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (also relying on *Perez* when defendant had "competently, knowingly, intelligently[,] and voluntarily waived his right to counsel").

Neither has Shelby shown that the trial court abused its discretion by denying his motion for new trial based on "newly discovered evidence." To prevail on a motion for a new trial based on evidence not previously before the trial court, the movant must satisfy the court that (1) the evidence has come to light since the trial or hearing, (2) the movant's failure to discover the evidence earlier was not due to a lack of due diligence, (3) the newly discovered evidence is not cumulative, and (4) the evidence is so material that it would probably cause a different result. *Benz Group v. Barreto*, 404 S.W.3d 92, 97 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The trial court did not abuse its discretion by concluding that Shelby failed to make such a showing; the trial judge had letters before her addressed not only to Jessica and Tiffany but also to James herself—they speak for themselves.

As for the alleged judicial misconduct, which Shelby claims occurred during the February 6, 2020 hearing of which no record was made, the trial court's order granting Shelby's continuance on that same date recites that Shelby "appeared in person and requested that th[e] hearing be continued." Because Shelby was present at that hearing, his new-trial complaint was too late to preserve error. *See K.T. v. M.T.*, No. 02-14-00044-CV, 2015 WL 4910097, at *1–2 (Tex. App.—Fort Worth Aug. 13, 2015, no pet.) (mem. op.). Thus, the trial court did not abuse its discretion by denying his motion for new trial as to this complaint.

Because none of Shelby's new-trial complaints compel a new trial, we hold that the trial court did not abuse its discretion by denying the motion.

**FFCL Request**

Shelby's request for findings of fact and conclusions of law generally sought additional facts and conclusions to support the trial court's specific findings in the protective order. But when a protective order contains the findings required by statute, the trial court is not required to make additional findings. *Kardam v. Lofstrom*, No. 05-18-01435-CV, 2020 WL 467785, at *2 (Tex. App.—Dallas Jan. 28, 2020, no pet.) (mem. op.). Here, the court's order contains the findings required to support its issuance under Family Code Section 85.002; thus, the trial court did not err by failing to respond to Shelby's request for additional findings of fact and conclusions of law.

**Bill of Exceptions**

Although Shelby's formal bill of exceptions was timely filed, nothing in the record shows that it was presented to the trial judge or agreed to by James according to the procedure set forth in Rule 33.2. Tex. R. App. P. 33.2(c). Thus, Shelby cannot complain about the trial court's failure to take action on the formal bill. *Cf. Bryan v. Watumull*, 230 S.W.3d 503, 516–17 (Tex. App.—Dallas 2007, pet. denied) (holding that formal bill of exceptions not presented to trial judge or agreed to by appellee preserved nothing for review).

**Issues in Reply Brief**

Shelby filed a reply brief, in which he responded to arguments James made in her brief. Because we are not obligated to address issues raised for the first time in a

reply brief, we decline to do so. *In re A.R.*, No. 02-18-00311-CV, 2019 WL 1186963, at *9 (Tex. App.—Fort Worth Mar. 14, 2019, pet. denied) (mem. op.).

## Conclusion

Having overruled all of Shelby's issues but one, we modify the trial court's judgment to delete the court costs imposed against Shelby. We affirm the judgment as modified. To the extent that we have not ruled on any of Shelby's pending motions in this court, we deny relief.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: September 23, 2021